NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3908
_____

THOMAS D'AMICO,

Appellant

v.

KAREN BALICKI, Administrator, South Woods State Prison;
ATTORNEY GENERAL NEW JERSEY
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2:11-cv-04168)
District Judge: Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 8, 2014

Before: SMITH, VANASKIE, and SHWARTZ, *Circuit Judges*.

(Opinion Filed: November 13, 2014)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

    Thomas D'Amico appeals the District Court's denial of his petition for a writ of

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

habeas corpus sought pursuant to 28 U.S.C. § 2254. We granted a certificate of appealability on D'Amico's claims that his right to effective assistance of counsel was violated when his attorney failed (1) to convey the State's final plea offer and discuss the consequences of that offer, and (2) to request a pretrial conference to ensure D'Amico's understanding of that plea offer. We agree with the District Court that the state courts reasonably determined that, even if informed of this potential plea agreement, D'Amico would have rejected it, and thus suffered no prejudice as a result of counsel's alleged failings. Accordingly, we will affirm the District Court's denial of habeas relief.

I.

D'Amico was named as a defendant in five counts of an eleven-count indictment arising out of the beating death of a bar patron. The charges against D'Amico, a police officer who was off-duty at the time of the savage assault, included first-degree murder, first-degree aggravated manslaughter, fourth-degree obstructing administration of the law, and two counts of second-degree official misconduct. Prior to trial, four of D'Amico's co-defendants pleaded guilty to second-degree reckless manslaughter. Their plea agreements required each to receive a seven-year sentence. Under New Jersey law, they would be required to serve at least 85% of their respective seven-year terms pursuant to the No Early Release Act ("NERA"), N.J. Stat. Ann. § 2C:43-7.2.

Prior to trial, D'Amico's counsel, Robert Norton, attempted to negotiate a plea for his client. Throughout these negotiations, Norton explained to D'Amico the impact NERA would have on the potential sentence. Norton told D'Amico that he would likely have to serve at least 85% of any term of incarceration imposed for aggravated

2

manslaughter. Norton also explained that D'Amico may have to serve up to 50% of a prison term on an official misconduct conviction. Additionally, Norton informed D'Amico of the consequences of consecutive sentences if he either pleaded or was found guilty. D'Amico acknowledged that he understood the import of NERA and its impact on his potential sentence.

As the case proceeded toward trial, Norton told D'Amico of two plea offers. The first required him to plead guilty to both aggravated manslaughter, with a 20-year sentence, as well as official misconduct, with a seven-year concurrent sentence.[1] He would have to serve 85% of the 20-year term pursuant to NERA before being eligible for release. Norton felt this was a bad plea deal and D'Amico rejected it. The State subsequently proposed that D'Amico plead guilty to the same crimes and receive a ten-year sentence for aggravated manslaughter, with a consecutive seven-year sentence for official misconduct. Under NERA, D'Amico would have to serve at least 85% of the ten-year sentence before beginning his consecutive term. He declined that offer as well.

Throughout the negotiations leading up to his trial, D'Amico reiterated that he wanted the same plea deal that his co-defendants had accepted. In line with this position, Norton sought a seven-year sentence on the aggravated manslaughter count with a concurrent term for official misconduct. The State made a final offer that included a seven-year sentence for aggravated manslaughter and a consecutive seven-year term for

---

[1] D'Amico testified and contends on appeal that this first plea offer included an 18-year sentence for aggravated manslaughter rather than a 20-year sentence. He agrees that he rejected it, however.

3

official misconduct.[2]  Under NERA, D'Amico would serve at least 85% of his seven-year sentence for aggravated manslaughter before commencing the consecutive seven-year sentence.  Although this offer was communicated to Norton, he did not convey it to D'Amico.  Further, no pre-trial conference was held as required by New Jersey Court Rule 3:9-1, so this final offer was not made part of the record.  D'Amico claimed during his Post-Conviction Relief ("PCR") hearing that if he had known about it, he would have accepted an agreement that contained sentences of seven years and five years to run consecutively.  He did not assert that he would have accepted the same plea deal if it included a consecutive seven-year sentence for official misconduct, rather than a five-year term.

No plea agreement was reached and D'Amico proceeded to trial.  The jury acquitted him on the murder charge, but found him guilty of one count of first-degree aggravated manslaughter, two counts of second-degree official misconduct, and one count of fourth-degree obstructing administration of law.  After merging the latter three convictions into a single count of second-degree official misconduct, the trial judge sentenced D'Amico to 20 years for manslaughter and imposed a consecutive seven-year term for official misconduct.

After exhausting his direct appeals, D'Amico filed a PCR petition in the Superior Court of New Jersey.  D'Amico and the State presented testimony and other evidence

---

[2] Although D'Amico claims that the final offer included a five-year sentence for official misconduct, the prosecuting attorney only recalls communicating a seven-year consecutive sentence.

during the PCR hearing. The Superior Court determined that, even if D'Amico had been aware of the State's final plea offer, he would not have accepted it because it required him to serve consecutive sentences. The Appellate Division of the New Jersey Superior Court affirmed "substantially for the reasons expressed by [the Superior Court judge] in his well-reasoned oral decision of January 22, 2008." *State v. D'Amico*, No. A-3187-07T4, 2010 WL 1758360, at \*4 (N.J. Super. Ct. App. Div. May 3, 2010), *cert. denied*, 12 A.3d 211 (N.J. 2011).

D'Amico then sought relief in federal court, filing a petition for habeas relief based on Norton's alleged failure to convey the final plea offer and failure to request a pre-trial conference. Concluding that D'Amico did not show that the state court's rejection of his ineffective assistance of counsel claims was unreasonable, the District Court denied relief. This appeal followed.

II.

The District Court had jurisdiction under 28 U.S.C. §§ 2241(a) and 2254(a). We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). We exercise plenary review over the District Court's legal conclusions. *See Coombs v. Diguglielmo*, 616 F.3d 255, 260 (3d Cir. 2010).

Where, as here, a state court has decided the merits of a petitioner's habeas claim, relief in federal court may be granted only if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, ——, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

In reviewing the PCR court's conclusions in this case, we apply "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 131 S. Ct. 1388, 1403 (2011)). A federal court may "not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief is the remedy." *Id.* at 16 (quoting *Harrington*, 562 U.S. at ——, 131 S. Ct. at 786–87). Accordingly, where a habeas petitioner challenges the factual basis for a state court's decision, we "may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* at 15 (quoting 28 U.S.C. § 2254(d)(2)).

## III.

D'Amico argues that the PCR court erroneously rejected his Sixth Amendment claim and, therefore, unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* constitutes "clearly established Federal law" for purposes of habeas relief under § 2254. *See Williams v. Taylor*, 529 U.S. 362, 391 (2000). *Strickland*'s two-pronged analysis requires that a habeas petitioner first establish that counsel's

performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. If the petitioner successfully shows deficient performance by his attorney, he must then demonstrate that he suffered prejudice as a result of the deficient performance. *Id.* at 691. In the context presented here, D'Amico "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel," *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012), and that the PCR court's contrary conclusion "'was based on an unreasonable determination of the facts' in light of the record before the state court," *Harrington*, 562 U.S. at ——, 131 S. Ct. at 785 (quoting 28 U.S.C. § 2254(d)(2)).

D'Amico cannot meet his burden here. The evidence supports the PCR court's factual finding that "there was no way . . . D'Amico would have accepted an offer above 7 [years] with 85 percent [as required by NERA]." (App. at 4741.) D'Amico testified during the PCR hearing that he would have rejected any plea bargain that included a sentence over seven years. (App. at 4395.) When questioned by his PCR counsel, he initially said he would have pleaded guilty if seven- and five-year consecutive terms had been offered; however, moments later, he qualified that statement by saying, "I would have to find out exactly" what the impact of a five-year consecutive term would be on the total sentence. (App. at 4397.) Only then did he claim that "I would have definitely considered it, definitely considered it." (App. at 4398.) These qualified statements are consistent with his earlier testimony that he wanted the same sentence as his co-defendants, Norton's recollection that he wanted that same plea deal with concurrent sentences, and the prosecutor's testimony that D'Amico explicitly sought a deal matching

7

those offered to his co-defendants.  Further, D'Amico admitted he understood the impact of NERA on his potential sentence, and Norton testified that he explained the consequences of consecutive sentences to him.  When D'Amico rejected the previous plea offer with consecutive sentences, he had a satisfactory understanding of both NERA and consecutive terms of imprisonment, appreciated the consequences of demanding a lighter sentence commensurate with that of his co-defendants, and steadfastly continued to demand a more lenient prison term.  When he did not receive the offer he sought, he went to trial.

Given the evidence before us, we cannot conclude that the PCR court's determination that D'Amico would have rejected the State's final plea offer was unreasonable.  Because we conclude that the PCR court's factual determinations are sufficiently supported by the record, D'Amico's second claim concerning the lack of a pre-trial conference fails for the same reason.[3]

### IV.

For the foregoing reasons, we will affirm the District Court's order denying D'Amico's petition for habeas relief.

---

[3] D'Amico contends that failure to hold a pre-trial conference pursuant to New Jersey Court Rule 3:9-1 violated his constitutional rights.  There is, however, no constitutional right to a pretrial conference, and a violation of state-law procedural requirements affords no basis for federal habeas corpus relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).