[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13149
Non-Argument Calendar
_____

D.C. Docket No. 0:13-cv-60537-WJZ

RICKY R. BANNER,

Petitioner-Appellee,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 29, 2016)

Before WILLIAM PRYOR, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

The Secretary appeals the grant of Ricky Banner's petition for a writ of habeas corpus. 28 U.S.C. § 2254. The district court ruled that Banner's trial counsel was ineffective for failing to object to Banner's sentence based on judicial vindictiveness. The Secretary argues that the district court failed to give appropriate deference to the decision of the state court that trial counsel was not required to object after Banner received a sentence longer than that offered to him before trial because of the facts disclosed at his trial and his lengthy criminal history. Because the district court refused to credit the reasonable factual findings of the state court that its sentence was not attributable to vindictiveness and its reasonable determination that counsel was not deficient in failing to object to Banner's sentence, we reverse and remand with an instruction that the district court deny Banner's petition.

## I. BACKGROUND

We divide our discussion of the background into four parts. First, we discuss Banner's rejection of a plea offer and his trial. Second, we discuss his belated direct appeal. Third, we discuss his state postconviction proceedings. Fourth, we discuss Banner's federal habeas corpus proceeding.

### A. Banner's Rejection of a Plea Offer and Trial

Banner appeared in a Florida court for trial on five criminal charges: burglary of a dwelling, Fla. Stat. § 810.02(1), (3); aggravated fleeing or eluding, *id.*

2

§ 316.1935(3)(a); grand theft, *id.* § 812.014(1), (2)(c)(6); exposure of sexual organs, *id.* § 800.03; and resisting an officer without violence, *id.* § 843.02. Before jury selection, the prosecutor asked to record a plea offer that Banner had rejected. The prosecutor represented that she had offered to reduce Banner's charges for his burglary and fleeing offenses, which would have lowered both his maximum penalty as an habitual felony offender from 30 years to 5 years and 1 day and his minimum penalty as a prison release reoffender from 15 years to 5 years.

Banner declared that he "already [knew] what [he was] looking at." The trial judge remarked that he was unfamiliar with Banner's case and conducted a brief colloquy with Banner. Banner stated that he understood the charges against him and the accompanying penalties.

Banner said he did not "understand the [State's] offer." The trial judge explained that Banner faced "up to 30 years [for his burglary and fleeing offenses] because they're second degree felonies," but the prosecutor had offered to reduce the charges to "attempted burglary of a dwelling" and "attempted aggravated fleeing or eluding," which were "third-degree felonies," and to recommend a sentence of "five years and one day as an habitual felony offender with a five year minimum mandatory as a prison release reoffender." Banner interjected that he was innocent; his "charges [were] weak"; and he "was invited in" the person's house, which "[s]hould basically be a trespass." When the trial judge remarked that

3

the prosecutor was "not offering you a trespass," Banner responded, "They're trying to give me the maximum on these look like charges, but I'm ready to let the jury decide my fate. I just come back on appeal now."

The trial judge questioned Banner again, and he reaffirmed that he understood his charges, his potential sentence, and the State's offer to plead guilty. The trial judge told Banner that he was entitled to "decline [the] offer and exercise your constitutional right to go to trial and that means that if the jury was to find you guilty, then their offer would be revoked, so you're looking at whatever your penalties are. If they find you not guilty, then of course you walk out of here without a problem." Banner said that he understood his rights and that he had discussed his case with his attorney, although they "[did not] come to terms with a lot of things." The trial judge stated that Banner should confer with his attorney "a couple more minutes," but when "the panel [was] here, the Court will not be accepting any further negotiated pleas." After the break, Banner announced that he wanted to "[g]o to trial. I'm going to proceed on the jury trial," and the prosecutor "revok[ed] [the] offer."

After the parties seated a jury, the prosecutor announced that the trial would be limited to the charges of aggravated fleeing and grand theft. And the prosecutor remarked that Banner no longer qualified as a prison release reoffender so he faced

4

a minimum sentence of 31.425 months. The prosecutor had offered Banner 32 months "to resolve this," but she "[did not] believe they're interested in that."

When questioned by the trial judge a third time, Banner acknowledged that he understood the two charges against him, his sentencing range, and the State's offer to plead guilty, but he wanted to proceed to trial. Banner stated that he was "having problems" with counsel and he wanted "somebody to listen . . . and understand where [he was] coming from." Banner complained that he was "not getting the proper attention" and needed "[c]ounseling . . . being that I'm going to trial, jury trial. . . . I don't need somebody come to me telling me about— threatening me about what I'm facing, I'm habitual . . . I want to hear something about going to trial."

The trial judge explained to Banner that it was counsel's responsibility to defend his client and to inform Banner "that there's a big difference . . . between 32 months in Florida State Prison and 30 years in Florida State Prison." "[I]f you tell [counsel] that you're not taking the offer," the trial judge assured Banner, counsel "will be the strongest advocate that you have seen on your behalf." "But at the same time," the trial judge cautioned Banner, "I don't want later on, if things don't go your way and the jury does not find you not guilty, and this Court sentences you to 30 years in Florida State Prison as an habitual felony offender for you to say well, you know what, my lawyer should have discussed that with me."

5

The trial judge said that he would give Banner "some time to talk to [counsel], but you have to regroup a little bit your thinking" to focus on the task counsel faced "to open holes on the credibility of the police officers without any other witnesses other than putting you on the stand" and, "[i]f he puts you on the stand, 10 prior felony convictions the jury is going to hear." That, the trial judge stated, is "what maybe [counsel] is trying to attempt for you to think about." The trial judge reminded Banner that, even if the State proved the lesser charge of fleeing and eluding, he could receive up to 10 years in prison, which was "differen[t] . . . [from] 31.425 months in Florida State Prison."

The trial judge said, "I love to try cases and I'm ready to try this case," yet "I take no pleasure . . . of entering long sentences. But that's what I will do if it's what I'm required to do if the jury finds you guilty." Banner remarked, "If I take it to trial, it's your job to give me whatever the max is on." But the judge responded that Banner's sentence would be "[w]hatever is appropriate" based on "whatever is presented at the sentencing hearing, if in fact there is a guilty verdict." The trial judge explained that counsel's job was to inform Banner about "the good, the bad, and the ugly."

The trial judge twice inquired if Banner wanted to discharge counsel, but Banner responded negatively. The trial judge assured Banner that he would receive a fair trial and added, "sometimes, unfortunately, what defendants don't like in

6

repeat offender court, it's not that they don't get a fair trial, it's that they don't like the sentences at the end because they face [the] reality of the statute they're designated under and the intent of the legislature." Banner conferred with counsel and elected to proceed to trial.

At trial, the State proved that Banner was driving a stolen rental van and he refused to stop for police officers, drove through a gas station, crashed his car into a fence, and attempted unsuccessfully to flee on foot. The jury convicted Banner of aggravated fleeing or eluding and trespass to a conveyance, a lesser-included offense of grand theft. Banner requested a presentence investigation report.

At sentencing, Banner stipulated that he had prior felony convictions for four counts of grand theft and one count of resisting a law enforcement officer without violence, of fleeing a police officer, and of driving with a suspended license. Banner also stipulated that he had been released from jail on March 7, 2003. The trial judge sentenced Banner, as an habitual felony offender, to 30 years of imprisonment for aggravated fleeing or eluding, with a mandatory minimum "sentence of 15 years as a prison release reoffender," and to time served for trespass to a conveyance. The sentence, the trial judge explained, was based on the evidence at trial; the arguments of the parties; the charging document; Banner's presentence report that "contain[ed] four and a half pages of prior criminal history that started [on] July 12 of 1981 [and] continued in '82, '83, in '84, in '85, '89,

'99, 2000, 2001, 2003, 2004"; and "the crime for which [he was] being sentenced."

### B. Banner's Belated Direct Appeal

Banner filed a belated direct appeal and challenged his classification as a prison release reoffender. The State conceded error. The Fourth District Court of Appeals affirmed Banner's sentence of 30 years of imprisonment, but vacated his mandatory minimum sentence of 15 years of imprisonment. *Banner v. State*, 4 So. 3d 789 (Fla. Dist. Ct. App. 2009).

### C. Banner's State Postconviction Proceedings

Banner twice moved for postconviction relief in the state courts. Banner first filed a state petition for a writ of habeas corpus and argued that appellate counsel was ineffective for failing to challenge as insufficient the evidence of aggravated fleeing or eluding. The state court denied Banner's petition summarily.

Banner next moved for state postconviction relief on the ground that trial counsel was ineffective for failing to object to "the vindictive sentence the court imposed after [he] elected to proceed to trial after the court injected itself into the unsuccessful plea negotiations." *See* Fla. R. Crim. P. 3.850. The State responded that trial counsel was not ineffective for failing to object when, under Florida law, Banner was not entitled to a presumption of judicial vindictiveness. According to the State, the record proved that the trial judge did not initiate plea discussions; he

8

participated to ensure that Banner understood his charges, potential penalties, and the State's offer; and the trial judge stated that Banner's sentence would be based on the evidence presented and not his decision to proceed to trial. The state court denied Banner's motion based on the "reasons articulated in the State's response," and the appellate court affirmed summarily, *Banner v. State*, 93 So. 3d 1041 (Fla. Dist. Ct. App. 2012).

### D. Banner's Federal Habeas Petition

Banner repeated his claim of ineffectiveness in his federal petition for a writ of habeas corpus. The Secretary answered that Banner was not entitled to a presumption of judicial vindictiveness and that trial counsel was not required to make a meritless objection to Banner's sentence.

A magistrate judge appointed counsel to represent Banner. Federal counsel argued that a reasonable attorney would have litigated whether Banner was entitled to a presumption of vindictiveness because the trial judge intervened in plea discussions without a request from either party; the trial judge suggested that Banner would receive a harsher penalty if he exercised his right to proceed to trial; there was a substantial disparity between the sentence offered before trial and that imposed after trial; and there was no new information presented after the offer to warrant a 30-year sentence.

The magistrate judge recommended that the district court grant Banner's

9

petition. The magistrate judge determined that the state court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), because trial counsel should have objected to Banner's sentence based on judicial vindictiveness. After *de novo* review, the district court "decline[d] to adopt the [initial] Report and re-refer[red] [the] matter to [the magistrate judge] for further recommendation, including the manner and procedure by which the Florida Court could correct the putative constitutional error, and to whom such directive should issue."

The magistrate judge prepared a supplemental report containing the same conclusion as the initial report. The magistrate judge faulted the state court for failing to "make its own factual findings" and "deny[ing] relief for the reasons stated in the State's response." After classifying "[t]hose factual findings [as] objectively unreasonable," the magistrate judge found that "the [trial] court inserted itself into the plea negotiations, urged Banner to accept a thirty-two month plea offer, suggested the jury would not find him credible due to his criminal history, and suggested that a maximum sentence of thirty years' imprisonment would be imposed if the jury found him guilty." That reading of "the record satisfie[d] all four prongs of" the totality of the circumstances test applied by the Florida courts and entitled Banner, the magistrate judge determined, to a "presumption of vindictiveness" that should have been litigated by trial counsel. And Banner was prejudiced by counsel's failure to object, the magistrate judge

10

decided, because "Banner would have been entitled to sentencing before a new judge." The magistrate judge ruled, in the alternative, that "[e]ven if [the] claim is analyzed with the deference normally afforded State court's decisions the outcome would be the same" because "it is not possible that fairminded jurists could disagree that [the] arguments and theories [relied on by the state court] conflict with *Strickland*." Over the Secretary's objections, the district court adopted the recommendation of the magistrate judge, granted Banner a writ of habeas corpus, and ordered the State either to resentence Banner or to release him.

## II. STANDARDS OF REVIEW

A petition for a writ of habeas corpus involving a claim of ineffective assistance of counsel presents a mixed question of law and fact that we review *de novo*. *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1260 (11th Cir. 2014). A state prisoner is entitled to a writ of habeas corpus only if the state court reached a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). The prisoner bears the burden of rebutting the factual findings of the state court "by clear and convincing evidence." *Id.* § 2254(e)(1). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). To warrant

11

habeas relief, the decision of the state court "must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

### III. DISCUSSION

The Supreme Court has stated repeatedly that a federal court reviewing a claim of ineffective assistance of counsel must apply a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (citing *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011)); *see Woods*, 136 S. Ct. at 1151; *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). Under *Strickland*, "the standard for judging counsel's performance is a most deferential one" that focuses on "whether [counsel's] representation amounted to incompetence under prevailing professional norms, not whether [he] deviated from best practices or most common custom." *Premo*, 131 S. Ct. at 740 (quoting *Richter*, 562 U.S. at 105). And when counsel's performance is reviewed in federal habeas court, "the question is not whether counsel's actions were reasonable"; instead, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* (quoting *Richter*, 562 U.S. at 105).

12

The factual findings of the state court are entitled to deference from federal courts. The "determination of a factual issue . . . by a State court [is] presumed to be correct" unless the state prisoner can rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Accordingly, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Titlow*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Banner argues that the factual findings of the magistrate judge should be reviewed for plain error because the Secretary failed to object to the initial report and recommendation, but we disagree. The district court "declined to adopt" the initial report. Instead, the district court "re-refer[red] [the] matter back to [the] magistrate judge to make further recommendation, including the manner and procedure" to give Banner relief. Later, the district court construed its order as "re-referring the . . . cause . . . [solely] for further recommendation regarding the manner and procedure" for relief, but the order rejected the initial report. And the magistrate judge interpreted the order as requiring a "further recommendation *including* the manner and procedure" to correct the purported constitutional error. Consistent with that interpretation, the magistrate judge did not reincorporate or refer to his initial report. The magistrate judge prepared a new report, entitled a supplemental report, in which he made findings of fact about the conduct of the

13

trial judge and defense counsel, concluded that the conduct of the trial judge created a presumption of judicial vindictiveness that counsel was deficient for failing to challenge, and recommended that the district court grant Banner a writ of habeas corpus. The Secretary timely objected to the supplemental report. By so doing, the Secretary preserved for review its objection to the finding that Banner's sentence was based on vindictiveness.

The district court erred. The record supports the finding of the state court that no presumption of vindictiveness arose from the imposition of a sentence exceeding the offer extended to Banner before trial. Florida courts examine the totality of the circumstances to determine whether there is a "reasonable likelihood" that a sentence evidences reprisal by the trial court. *Wilson v. State*, 845 So. 2d 142, 156 (Fla. 2003). The factors considered include whether the trial judge initiated the plea discussion with the defendant; whether the judge urged the defendant to plead guilty or suggested his sentence "would hinge on future procedural choices, such as exercising the right to trial"; "the disparity between the plea offer and the ultimate sentence imposed"; and "the lack of any facts . . . [to] explain the reason for the increased sentence other than that the defendant exercised his . . . right to a trial." *Id.* Although the magistrate judge faulted the state trial judge for interfering in plea negotiations and "urg[ing] Banner to accept a thirty-two month plea offer," the trial judge was entitled to "participate in such

14

discussions" after Banner said he did not understand the plea offer, *see State v. Warner*, 762 So. 2d 507, 513 (Fla. 2000), to ensure that Banner understood he faced a significantly greater punishment if convicted and that he wished to proceed to trial with an attorney whom he had criticized. Instead of "suggest[ing] the jury would not find [Banner] credible due to his criminal history," the trial judge mentioned Banner's criminal history to explain that his attorney was obligated to educate him about his case and to advise him whether a plea deal or trial was most advantageous. And the trial judge assured Banner that his sentence would be "[w]hatever is appropriate" based on "whatever is presented at the sentencing hearing, if in fact there is a guilty verdict." The trial judge informed Banner that the sentencing guidelines mandated that an habitual offender receive a sentence of 30 years because Banner refused to credit that information from his attorney. Furthermore, the record reflects that the trial judge imposed a sentence greater than that offered before trial based on the change in Banner's situation and additional information garnered about Banner. *See Alabama v. Smith*, 490 U.S. 794, 801–02 (1989); *Frank v. Blackburn*, 646 F.2d 873, 883–87 (5th Cir. 1980); *Cousin v. Blackburn*, 597 F.2d 511, 512–13 (5th Cir. 1979). The offense for which Banner was convicted was more serious than the charge to which he could have pleaded guilty, and the trial judge learned at trial and sentencing about the circumstances of

15

Banner's offense and the full extent of his criminal history, which was described in his presentence investigation report.

The district court was "doubly wrong to conclude that it would have been unreasonable to find that the defense attorney qualified as counsel for Sixth Amendment purposes." *Premo*, 131 S. Ct. at 740. Because Banner failed to "demonstrate[] a realistic likelihood of vindictiveness on the part of the sentencing judge," counsel could not be faulted for failing to object on that ground to Banner's sentence. *See Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988) (internal quotation marks and citation omitted). "[C]ounsel may be effective and yet not raise claims reasonably considered to be without merit." *Id.* (internal quotation marks and citation omitted). The district court lacked a "factual or legal justification for overturning the state court's decision." *Titlow*, 134 S. Ct. at 18.

The decision of the state court to deny Banner relief on his claim of ineffective assistance did not involve an unreasonable application of Supreme Court precedent. Because the district court erred by concluding otherwise, we reverse and remand with an instruction for it to deny Banner's petition for a writ of habeas corpus.

## IV. CONCLUSION

We **REVERSE** the judgment of the district court, and we **REMAND** with an instruction for the district court to deny Banner's petition for a writ of habeas corpus.

**REVERSED AND REMANDED.**

JORDAN, Circuit Judge, concurring.

I concur in the judgment.