Justice ALITO delivered the opinion of the Court.
*15 When a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that the federal court use a " 'doubly deferential' " standard of review that gives both the state court and the defense attorney the benefit of the doubt. Cullen v. Pinholster, 563 U.S. ----, ----, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011). In this case, the Sixth Circuit failed to apply that doubly deferential standard by refusing to credit a state court's reasonable factual finding and by assuming that counsel was ineffective where the record was silent. Because the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, and Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), do not permit federal judges to so casually second-guess the decisions of their state-court colleagues or defense attorneys, the Sixth Circuit's decision must be reversed.
I
Respondent Titlow and Billie Rogers, respondent's aunt, murdered Billie's husband Don by pouring vodka down his throat and smothering him with a pillow. With help from attorney Richard Lustig, respondent reached an agreement with state prosecutors to testify against Billie, plead guilty to manslaughter, and receive a 7- to 15-year sentence. As confirmed at a plea hearing, Lustig reviewed the State's evidence with respondent "over a long period of time," and respondent understood that that evidence could support a conviction for first-degree murder. App. 43-44. The Michigan trial court approved the plea bargain.
Three days before Billie Rogers' trial was to commence, however, respondent retained a new lawyer, Frederick Toca. With Toca's help, respondent demanded a substantially lower minimum sentence (three years, instead of seven) in exchange *16 for the agreement to plead guilty and testify. When the prosecutor refused to accede to the new demands, respondent withdrew the plea, acknowledging in open court the consequences of withdrawal (including reinstatement of the first-degree murder charge). Without respondent's critical testimony, Billie Rogers was acquitted, and later died.
Respondent subsequently stood trial. During the course of the trial, respondent denied any intent to harm Don Rogers or any knowledge, at the time respondent covered his mouth or poured vodka down *14 his throat, that Billie intended to harm him. Indeed, respondent testified to attempting to prevent Billie from harming her husband. The jury, however, elected to believe respondent's previous out-of-court statements, which squarely demonstrated participation in the killing, and convicted respondent of second-degree murder. The trial court imposed a 20- to 40-year term of imprisonment.
On direct appeal, respondent argued that Toca advised withdrawal of the guilty plea without taking time to learn more about the case, thereby failing to realize the strength of the State's evidence and providing ineffective assistance of counsel. Rejecting that claim, the Michigan Court of Appeals found that Toca acted reasonably in light of his client's protestations of innocence. That court found that respondent's decision to hire Toca was "set in motion" by respondent's "statement to a sheriff's deputy that [respondent] did not commit the offense." App. to Pet. for Cert. 101a. Applying the standard set forth by our decision in Strickland, which requires that defense counsel satisfy "an objective standard of reasonableness," 466 U.S., at 688, 104 S.Ct. 2052, the Michigan Court of Appeals concluded that "[w]hen a defendant proclaims ... innocence ..., it is not objectively unreasonable to recommend that the defendant refrain from pleading guilty-no matter how 'good' the deal may appear." App. to Pet. for Cert. 102a.
*17 Respondent then filed a federal habeas petition under 28 U.S.C. § 2254. Applying AEDPA's deferential standard of review, the District Court concluded that the Michigan Court of Appeals' ruling was "completely reasonable on the law and the facts" and denied relief. No. 07-CV-13614, 2010 WL 4115410, *15 (E.D.Mich., Oct. 19, 2010). In particular, the District Court concluded that "[c]ounsel could not be ineffective by trying to negotiate a better plea agreement for [Titlow] with Billie Rogers's trial imminent and [Titlow] stating at the time that Billie Rogers had committed the murder without ... assistance." Ibid.
The Sixth Circuit reversed. It found that the factual predicate for the state court's decision-that the withdrawal of the plea was based on respondent's assertion of innocence-was an unreasonable interpretation of the factual record, given Toca's explanation at the withdrawal hearing that "the decision to withdraw Titlow's plea was based on the fact that the State's plea offer was substantially higher than the Michigan guidelines for second-degree murder." 680 F.3d 577, 589 (2012). Further observing that "[t]he record in this case contains no evidence" that Toca fully informed respondent of the possible consequences of withdrawing the guilty plea, the Sixth Circuit held that Toca rendered ineffective assistance of counsel that resulted in respondent's loss of the benefit of the plea bargain. Id., at 589-592. Citing our decision in Lafler v. Cooper, 566 U.S. ----, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), the Sixth Circuit remanded this case with instructions that the prosecution must reoffer the original plea agreement to respondent, and that the state court should "consul[t]" the plea agreement and "fashion" a remedy for the violation of respondent's Sixth Amendment right to effective assistance of counsel during plea bargaining. 680 F.3d, at 592. Chief Judge Batchelder dissented on the grounds that the Michigan Court of Appeals' decision was reasonable. Id., at 593.
*18 On remand, the prosecution followed the Sixth Circuit's instructions and reoffered the plea agreement it had offered some 10 years before-even though, in light of Billie Rogers' acquittal and subsequent death, respondent was no longer able to deliver *15 on the promises originally made to the prosecution. At the plea hearing, however, respondent balked, refusing to provide a factual basis for the plea which the court could accept. Respondent admitted to pouring vodka down Don Rogers' throat, but denied assisting in killing him or knowing that pouring vodka down his throat could lead to his death. As at trial, respondent testified to attempting to prevent Billie Rogers from harming her husband. Eventually, after conferring with current counsel (not Toca), respondent admitted to placing Don Rogers in danger by pouring vodka down his throat with the knowledge that his death could result. The trial court took the plea under advisement, where the matter stands at present. We granted certiorari. 568 U.S. ---- (2013).
II
AEDPA instructs that, when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." § 2254(e)(1). We have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1), and we need not do so here. See Wood v. Allen, 558 U.S. 290, 293, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010). For present purposes, it is enough to reiterate "that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Id., at 301, 130 S.Ct. 841. AEDPA likewise imposes a highly deferential standard for reviewing *19 claims of legal error by the state courts: A writ of habeas corpus may issue only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" this Court. § 2254(d)(1).
AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights. "[T]he States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." Tafflin v. Levitt, 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). This principle applies to claimed violations of constitutional, as well as statutory, rights. See Trainor v. Hernandez, 431 U.S. 434, 443, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). Indeed, "state courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights," and this Court has refused to sanction any decision that would "reflec[t] negatively upon [a] state court's ability to do so." Ibid. (internal quotation marks omitted). Especially where a case involves such a common claim as ineffective assistance of counsel under Strickland -a claim state courts have now adjudicated in countless criminal cases for nearly 30 years-"there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned ... than his neighbor in the state courthouse." Stone v. Powell, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (internal quotation marks omitted).
Recognizing the duty and ability of our state-court colleagues to adjudicate *16 claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court *20 was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. ----, ----, 131 S.Ct. 770, 786-787, 178 L.Ed.2d 624 (2011)."If this standard is difficult to meet"-and it is-"that is because it was meant to be." Id., at ----, 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. Id., at ----, 131 S.Ct., at 786 (internal quotation marks omitted).
III
The record readily supports the Michigan Court of Appeals' factual finding that Toca advised withdrawal of the guilty plea only after respondent's proclamation of innocence. Respondent passed a polygraph denying planning to kill Don Rogers or being in the room when he died. Thereafter, according to an affidavit in the record, respondent discussed the case with a jailer, who advised against pleading guilty if respondent was not in fact guilty. App. 298 (affidavit of William Pierson).[1] That conversation "set into motion" respondent's decision to retain Toca. Ibid., ¶ 8. Those facts, together with the timing of Toca's hiring-on the eve of the trial at which respondent was to self-incriminate-strongly suggest that respondent had second thoughts about confessing in open court and proclaimed innocence to Toca. That conclusion is further bolstered by respondent's maintenance of innocence of Don Rogers' death at trial.
Indeed, reading the record in any other way is difficult. Respondent's first lawyer, Lustig, had negotiated a deal that was quite favorable in light of the fact, admitted by respondent *21 in open court, that the State's evidence could support a conviction for first-degree murder. This deal involved a guilty plea to manslaughter and a 7- to 15-year sentence-far less than the mandatory sentence of life in prison that results from a conviction for first-degree murder under Michigan law. See Mich. Comp. Laws Ann. § 750.316 (West Supp.2013). Yet after a jailer advised against pleading guilty if respondent was not guilty, something caused respondent both to fire Lustig and hire Toca (who within a few days withdrew the guilty plea), and then to maintain innocence at trial. If that something was not a desire to assert innocence, it is difficult to imagine what it was, and respondent does not offer an alternative theory.
The only evidence the Sixth Circuit cited for its conclusion that the plea withdrawal was not based on respondent's proclamation of innocence was that, when Toca moved to withdraw the guilty plea, he "did not refer to Titlow's claims of innocence," but instead "explained that the decision to withdraw [the] plea was based on the fact that the State's plea offer was substantially higher than the Michigan guidelines for second-degree murder." 680 F.3d, at 589. The Sixth Circuit believed that this fact "sufficiently rebuts the Michigan Court of Appeals'
*17 finding that the plea withdrawal was based on Titlow's assertion of innocence." Ibid.
But the Michigan Court of Appeals was well aware of Toca's representations to the trial court, noting in its opinion that respondent "moved to withdraw [the] plea because the agreed upon sentence exceeded the sentencing guidelines range." App. to Pet. for Cert. 100a. The Michigan Court of Appeals, however-unlike the Sixth Circuit-also correctly recognized that there is nothing inconsistent about a defendant's asserting innocence on the one hand and refusing to plead guilty to manslaughter accompanied by higher-than-normal punishment on the other. Indeed, a defendant convinced of his or her own innocence may have a particularly optimistic view of the likelihood of acquittal, and therefore *22 be more likely to drive a hard bargain with the prosecution before pleading guilty. Viewing the record as a whole, we conclude that the Sixth Circuit improperly set aside a "reasonable state-court determinatio[n] of fact in favor of its own debatable interpretation of the record." Rice v. Collins, 546 U.S. 333, 335, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006).
Accepting as true the Michigan Court of Appeals' factual determination that respondent proclaimed innocence to Toca, the Sixth Circuit's Strickland analysis cannot be sustained. Although a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under Strickland, it may affect the advice counsel gives. The Michigan Court of Appeals' conclusion that Toca's advice satisfied Strickland fell within the bounds of reasonableness under AEDPA, given that respondent was claiming innocence and only days away from offering self-incriminating testimony in open court pursuant to a plea agreement involving an above-guidelines sentence.[2] See Florida v. Nixon, 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (explaining that the defendant has the " 'ultimate authority' " to decide whether to accept a plea bargain); Brookhart v. Janis, 384 U.S. 1, 7-8, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) (observing that a lawyer must not "override his client's desire ... to plead not guilty"). The Sixth Circuit's conclusion to the contrary was error.
Even more troubling is the Sixth Circuit's conclusion that Toca was ineffective because the "record in this case contains no evidence that" he gave constitutionally adequate advice on whether to withdraw the guilty plea. 680 F.3d, at 590. We have said that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," Strickland, 466 U.S., at 690, 104 S.Ct. 2052, and that the burden to "show that counsel's performance was deficient" rests *23 squarely on the defendant, id., at 687, 104 S.Ct. 2052. The Sixth Circuit turned that presumption of effectiveness on its head. It should go without saying that the absence of evidence cannot overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id., at 689, 104 S.Ct. 2052. As Chief Judge Batchelder correctly explained in her dissent, "[w]ithout evidence that Toca gave incorrect advice or evidence that he failed to give material advice, Titlow cannot establish that his performance was deficient." 680 F.3d, at 595. *18 The Sixth Circuit pointed to a single fact in support of its conclusion that Toca failed to adequately advise respondent: his failure to retrieve respondent's file from Lustig before withdrawing the guilty plea. Id. , at 590. But here, too, the Sixth Circuit deviated from Strickland 's strong presumption of effectiveness. The record does not reveal how much Toca was able to glean about respondent's case from other sources; he may well have obtained copies of the critical materials from prosecutors or the court. (Indeed, Toca's statement at the plea withdrawal hearing that "[t]here's a lot of material here" strongly suggests that he did have access to a source of documentation other than Lustig's file. App. 71.)
In any event, the same considerations were relevant to entering and withdrawing the guilty plea, and respondent admitted in open court when initially pleading guilty that Lustig had explained the State's evidence and that this evidence would support a conviction for first-degree murder. Toca was justified in relying on this admission to conclude that respondent understood the strength of the prosecution's case and nevertheless wished to withdraw the plea. With respondent having knowingly entered the guilty plea, we think any confusion about the strength of the State's evidence upon withdrawing the plea less than a month later highly unlikely.
Despite our conclusion that there was no factual or legal justification for overturning the state court's decision, we recognize that Toca's conduct in this litigation was far from *24 exemplary. He may well have violated the rules of professional conduct by accepting respondent's publication rights as partial payment for his services, and he waited weeks before consulting respondent's first lawyer about the case. But the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance, and we have held that a lawyer's violation of ethical norms does not make the lawyer per se ineffective. See Mickens v. Taylor, 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). Troubling as Toca's actions were, they were irrelevant to the narrow question that was before the Sixth Circuit: whether the state court reasonably determined that respondent was adequately advised before deciding to withdraw the guilty plea. Because the Michigan Court of Appeals' decision that respondent was so advised is reasonable and supported by the record, the Sixth Circuit's judgment is reversed.[3]
It is so ordered.

Respondent complains that the state court improperly relied on this affidavit, but it was respondent who provided the affidavit to the state court and asked it to rely on the affidavit as part of the ground for remanding for an evidentiary hearing. In any event, even if the state court used the affidavit for a purpose not permitted by state law-a proposition we do not endorse-that would not empower a federal court to grant habeas relief. See Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

We assume, arguendo, as did the Michigan Court of Appeals, that Toca went beyond facilitating respondent's withdrawal of the plea and advised withdrawal, although we note that the sole basis in the record for this assertion appears to be respondent's self-serving testimony.

Because we conclude that the Sixth Circuit erred in finding Toca's representation constitutionally ineffective, we do not reach the other questions presented by this case, namely, whether respondent adequately demonstrated prejudice, and whether the Sixth Circuit's remedy is at odds with our decision in Lafler v. Cooper, 566 U.S. ----, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).