ROGERS, Circuit Judge,
concurring.
Counsel’s alleged failure to investigate or call Dawkin is troubling, and Dawkin’s potential evidence is not easily dismissed as not worthy of counsel’s investigation. A juror in a “he said/he said” case, hearing no evidence whatsoever corroborating one side’s version, might readily find the other side’s version to be beyond a reasonable doubt. But some corroboration could make all the difference. Dawkin’s potential evidence, as described to the state court, could have provided some doubt-inducing corroboration of Fitchett’s version of the two distinct stories. The argument was raised in the state court and in the district court, and if there was such evidence, it could have made a difference. Affirmance is warranted, however, because Fitchett has failed to present sufficient evidence that his counsel’s performance was deficient and has not adequately presented an argument to us on appeal that the district court should have granted an evidentiary hearing.
At trial, Fitchett testified that Esparza attacked Fitchett with a screwdriver while Esparza and Gorsuch were attempting to rob Fitchett. R. 8-6 at PagelD #212. Fitchett testified that Esparza and Gor-such then fabricated the shooting in order to cover up their crime. Id. at PagelD # 213. Esparza and Gorsuch, in contrast, testified that Fitchett shot at Esparza without provocation. R. 8-5 at PagelD # 173-174, # 180. The jury was therefore presented with' two different versions of the events that occurred on September 22, 2006. Although Dawkin was not present during the altercation and therefore could *494 not testify about whether Fitchett shot Esparza or about whether Esparza attacked Fitchett with a screwdriver, Daw-kin could testify that she treated a wound that Fitchett sustained after the altercation occurred. Dawkin’s testimony therefore would have corroborated Fitchett’s account of the altercation and contradicted Esparza and Gorsuch’s version of events.
Moreover, the jury’s verdict lacked overwhelming record support. “A verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support,” Strickland v. Washington, 466 U.S. 668, 696, 104 S.Ct. 2052, 80 L.Ed.2d 674. (1984). Although Fitchett was convicted of a number of firearm charges, the State did not introduce any evidence at trial that indicated that the State had recovered a firearm from Fitch-ett. Further, the officer who tagged the .25 caliber bullet shell casing that was discovered at the scene of the altercation as evidence did not determine whether the casing was warm or emitted a smell of exploded gunpowder, R. 8-5 at PagelD # 184, # 186. The officer also was not aware if any other testing had been performed after the shell was tagged as evidence. Id. at PagelD # 186. The record therefore left open the possibility that the casing had been on the street for some time before the incident.
The record also did not definitively establish the identity of the person who first found the .25 caliber shell casing at the scene of the altercation. The officer who tagged the casing as evidence testified that she was the person who had first found the casing at the scene. Id, at PagelD # 185, However, Gorsuch, who acknowledged that he had previously owned a .25 caliber gun, also testified that he was the person who found the casing. Id. at PagelD # 182. The evidence thus left open the possibility that Gorsuch planted the casing at the scene.
The evidence also left open the possibility that Esparza’s injury was caused by Fitchett’s striking Esparza with a cane rather than by Fitchett’s shooting Esparza with a gun. Esparza and Gorsuch testified that the bullet that caused Esparza’s injury grazed his skin directly and made several holes in his coat. R. 8-5 at PagelD # 177, # 181. Esparza also testified that although he was wearing a t-shirt under his coat, the bullet did not go through his t-shirt before exiting his coat. Id. at Pa-gelD # 177. As the Michigan Court of Appeals noted, “Esparza’s testimony that the bullet that produced [his] grazing wound ... did not damage the t>-shirt he was wearing is [ ] difficult to reconcile with the damage to the jacket.” People v. Fitchett, No. 277068, 2008 WL 4228354, at *2 (Mich.Ct.App. Sept. 16, 2008). Further, Fitchett did not agree with the State’s contention that Esparza’s wound was inconsistent with being struck by a cane. R. 8-6 at PagelD # 216. A jury could therefore conclude, consistent with the record, that Esparza’s wound was caused when Fitchett struck Esparza with a cane, not when Fitchett shot at Esparza with a gun. Accordingly, given the weaknesses in the State’s case, a jury could have believed Fitchett’s claim that he did not shoot Es-parza if Dawkin had testified at trial.
The state court appears to have treated as procedurally defaulted Fitchett’s claim regarding evidence from Dawkin. The state court stated that Fitchett “suggested] that [Dawkin] had relevant testimony to present, but is totally vague and non-specific as to what that testimony would have been.” R. 8-14 at PagelD # 470. The state court therefore concluded that “[s]ince [Fitchett] has not adequately briefed this point, the Court treats it as abandoned.” Id. But Fitchett did not *495 procedurally default his claim that his counsel was ineffective for failing to investigate or call Dawkin. Fitchett stated in his post-conviction brief to the state court that “Ms. Dawkin was the person that was present after the defendant and the alleged victim had previously had an altercation, she’d cleaned and the dressed the wound of Bartolo Fitchett after being stabbed by the alleged victim.” R. 8-13 at PagelD #450. These assertions are not totally vague.and non-specific about what Dawkin’s testimony would have been. Fitchett clearly stated that Dawkin would have testified that she treated the wound that Esparza allegedly gave Fitchett with a screwdriver.
Because the state court erroneously rejected Fitchett’s claim as procedurally defaulted (rather than denying the claim on the merits, as the State would read the state court’s opinion), we review the claim de novo. The claim fails not because evidence like that described above need not have been investigated or presented, but because there was not sufficient indication that such evidence existed. The Supreme Court has held “that counsel should be ‘strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.’ ” Burt v. Titlow, — U.S. -, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052). The Supreme Court has also held that “[i]t should go without saying that the absence of evidence cannot overcome the ‘strong presumption that counsel’s conduct [fell] within the wide range of reasonable professional assistance.’” Burt, 134 S.Ct. at 17 (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052).
Fitchett did not meet his burden to overcome the presumption that his counsel provided reasonable professional assistance. Fitchett alleged in his state post-conviction petition that his counsel did not investigate or call Dawkin as a witness even though Fitchett told his counsel that Dawkin had treated a wound that Fitchett received after Esparza stabbed him. R. 8-13 at PagelD #449-450. However, as stated in part ILB.l.a of the majority opinion, Fitchett submitted no affidavit from himself or Dawkin that substantiated Fitehett’s claim that Dawkin could testify that she treated Fitchett’s wound. Fitch-ett also did not submit an affidavit of his own detailing what he told his counsel about Dawkin. Further, as stated in part II.B.l of the majority opinion, the record does not indicate what Fitchett’s counsel did with the information that he allegedly received from Fitchett about Dawkin. Fitchett therefore has not provided support for his allegations that he told his counsel that Dawkin could testify that she treated Fitchett’s wound, that Dawkin could actually testify as Fitchett claimed, or that his counsel failed to investigate Dawkin. Accordingly, Fitchett’s unsubstantiated allegations are not sufficient to rebut Strickland’s strong presumption that his counsel provided reasonable professional assistance.
In his reply brief, Fitchett contends that rather than affirming the denial of his petition, this court should remand this case to the district court for that court to hold an evidentiary hearing to resolve the factual issue of whether Fitchett’s counsel investigated Dawkin. Appellant Reply Br. at 23-24. “Our general rule is that an appellant abandons all issues not raised and argued in its initial brief on appeal.” Guilmette v. Howes, 624 F.3d 286, 292 (6th Cir.2010) (internal citation and alteration omitted). In his habeas petition, Fitchett asked the district court to grant him a new trial on the basis of his claim that his counsel was ineffective when he failed to investigate Dawkin or “in the alternative *496 an evidentiary hearing to better develop the factual basis of the issue.” R. 1 at PagelD # 29. Although the district court did not explicitly address Fitchett’s request for an evidentiary hearing, the district court held that “[hjabeas relief ... is not warranted on [Fitchett’s] claims about trial counsel” and denied Fitchett’s peti-. tion in its entirety. R. 15 at PagelD # 514, # 521. Despite this denial, Fitchett did not contend in his opening brief on appeal that the district court abused its discretion in denying his request for an evidentiary hearing. Fitchett therefore abandoned an argument on appeal that he should have been granted an evidentiary hearing in the federal district court.
With respect to counsel’s failure to investigate or call Oviedo, I agree as well that affirmance is warranted. The state court determined that Fitchett’s ineffective-assistance-of-counsel claim failed because Oviedo’s testimony would not have been admissible at trial, and this ruling is given deference under AEDPA. R. 8-14 at PagelD # 470. The state court’s ruling applied to both Fitchett’s claim that his counsel was ineffective when he failed to call Oviedo and to Fitchett’s claim that his counsel was ineffective when he failed to investigate Oviedo. Essentially for the reasons given in part II.B.l.b of the majority opinion, the state court reasonably applied clearly established federal law when it held that Fitchett failed to show that his counsel was ineffective for failing to investigate or call Oviedo.