**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0383n.06

**No. 17-1742**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Aug 01, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARK DEWITT YANCEY, | ) | |
| | ) | |
| Petitioner - Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| RANDALL HAAS, | ) | MICHIGAN |
| | ) | |
| Respondent - Appellee. | ) | OPINION |
| | ) | |

---

BEFORE: NORRIS, DONALD, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** A Michigan jury convicted Mark Yancey of first-degree murder and possession of a firearm during the commission of a felony. He was sentenced to life in prison without parole, plus two years for the felony-firearm conviction. His case turned on identifying him as the passenger gunman in a drive-by shooting. Yancey's defense counsel attacked the prosecution's single, eyewitness account. But, obviously, this strategy did not work.

After trial, Yancey alleged that his counsel provided him with ineffective assistance because she did not investigate and present six alleged alibi witnesses. The Michigan courts denied his claims. He petitioned for habeas relief in federal district court, but that court denied his claims, too. Combining our standard for reviewing ineffective-assistance-of-counsel claims with our deference to state court decisions under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") creates a heavy burden of proof for Yancey to meet. His claim fails to meet that burden, and so we affirm.

**I.**

After the Michigan Court of Appeals affirmed Yancey's conviction and the Michigan Supreme Court denied review of his case, Yancey moved for relief from judgment in state trial court, arguing that his counsel was ineffective. According to Yancey, she was not prepared for trial, and she failed to investigate certain alibi witnesses and present those witnesses at trial.

The state trial court denied Yancey's motion for relief from judgment. The court found that Yancey's counsel (1) filed a notice of alibi defense but chose not to present it; (2) was not unaware of the witnesses; (3) knew some of the witnesses were listed as potential witnesses for the prosecution and their statements were provided to the police; and (4) knew about other witnesses who were Yancey's relatives. Ultimately, the state trial court concluded "[t]rial counsel considered presenting an alibi defense, knew of potential witnesses, and chose to use a different, reasonable strategy" of "attack[ing] the credibility of the one witness who identified [Yancey]." After also pointing out that Yancey consented on the record to his counsel's strategy, the state trial court explained that it would not second-guess that strategy.

Yancey moved for the state trial court to reconsider this decision, but he was denied. The state trial court explained, again, that "trial counsel's decision not to present the alibi defense was strategic and not the result of a failure to investigate." And the court stated that not presenting an alibi defense at trial "was reasonable." Yancey appealed. But the Michigan Court of Appeals and the Michigan Supreme Court denied review.

So Yancey filed a petition for habeas under 28 U.S.C. § 2254 in federal district court. He again argued that his counsel was ineffective by not being prepared for trial and by failing to investigate and present alibi witnesses. The federal district court held that the Michigan court's decisions that Yancey's counsel was prepared and not ineffective were objectively reasonable.

The district court explained that Yancey's counsel reasonably chose not to present Yancey's family members because of credibility concerns that might backfire and hurt Yancey. For the other alibi witnesses, the court held that Yancey was not prejudiced by his counsel's failure to investigate them because they could not be found at the time of trial.

And so Yancey sought a certificate of appealability from this court. We granted that certificate as to his alibi argument. Whether Yancey's counsel was prepared for trial is not before us. We consider only "whether [Yancey's] counsel was ineffective for failing to present an alibi defense."

## II.

Yancey faces a steep hill to success. We review de novo the "district court's legal conclusions and mixed questions of law and fact." *See Trimble v. Bobby*, 804 F.3d 767, 773 (6th Cir. 2015). But AEDPA requires us to give substantial deference to state court decisions. And the state court decisions here involve application of Supreme Court precedent—*Strickland v. Washington*—that itself requires high deference to decisions of trial counsel. 466 U.S. 668 (1984). In this doubly-deferential domain, Yancey's arguments falter.

The well-trodden *Strickland* test consists of two parts: objective reasonableness and prejudice. First, defendants "must show that [their] counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Our scrutiny of "counsel's performance must be highly deferential." *Id.* at 689. We "indulge a strong presumption" that a defendant's counsel "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689–90. Second, to establish prejudice, defendants "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Here, "reasonable probability" is "a probability sufficient

to undermine confidence in the outcome." *Id.* Defendants must show a substantial likelihood of a different result, not merely a conceivable one. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). And for investigating leads specifically, counsel must "make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. So, as discussed, the *Strickland* test is highly deferential.

We also must throw AEDPA's deferential standard into the mix. AEDPA's "standard is difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), to say the least. But when combined with *Strickland*, it becomes even harder. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

AEDPA reminds federal courts that state courts know what they are doing, too. *See Burt v. Titlow*, 571 U.S. 12, 19 (2013) ("[T]here is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse." (internal quotation marks omitted)). In light of state court competency, AEDPA creates a "formidable barrier" to petitions to federal court for habeas relief on claims that state courts already have decided. *Id.* Section 2254(d) restricts us from granting habeas relief on claims already decided by state courts unless those state court decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

Yancey focuses on the "unreasonable application" prong of § 2254(d)(1). For a state court to have *unreasonably* applied federal law, the court's ruling must be "objectively unreasonable" such that it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted).

So here we ask whether the Michigan state court's applying *Strickland*'s deferential standard to determine that Yancey's counsel was not ineffective "was so lacking in justification" that fair minds would agree that the Michigan court erred. In other words, if fair minds *could* disagree over whether it erred, Yancey *loses*. We are indeed operating in a doubly-deferential domain—one that Yancey's claims here cannot survive.

The prosecution's case turned on one eyewitness's account of the murder. So Yancey's counsel focused on attacking that one account at trial. But Yancey argues that his counsel should have investigated and ultimately presented six alleged alibi witnesses: Tracy Yancey, Beverly Thornton, Collin Yancey, Ronald Pearson, Marcus Ester, and Marcus Jackson. Tracy, Beverly, and Collin are related to Yancey. All six witnesses say that they were with Yancey on the night of the murder.

It was not objectively unreasonable or prejudicial for Yancey's counsel not to investigate and present all these witnesses. More importantly, the Michigan state court's reaching this same conclusion was not "so lacking in justification" and in error "beyond any possibility for fairminded disagreement." *See White v. Woodall*, 134 S. Ct. at 1702 (internal quotation marks omitted). The facts here support the Michigan court's decision.

For starters, Yancey does not argue that he ever even told his counsel about these potential alibi witnesses. He did alert her to two potential alibi witnesses—whose inclusion is not at issue—and she immediately requested an adjournment so that she could pursue these potential witnesses. The court denied her request, so she moved on to other potential alibi witnesses: she investigated a woman named Norna Jett as a potential alibi witness, filed a notice of alibi defense for Jett, and listed Jett as a potential alibi witness.

Yancey's counsel also spoke with Tracy Yancey, one of the six witnesses whom Yancey argues should have been investigated and presented at trial. Tracy told Yancey's counsel that "[she] and other family members" could vouch for Yancey by providing an alibi. Yancey's counsel listened to Tracy's proposed testimony that the family members were with Yancey on the night of the murder. In response, Yancey's counsel told Tracy that "it [was not] a good idea to call family members as witnesses because it would appear that the family was trying to 'cover' for [Yancey]." That strategy for family members also would apply to Thornton and Collin, who, like Tracy, are related to Yancey.

After asking the court for more time to pursue alibi witnesses, investigating Jett and listing her as a potential alibi witness, and investigating Tracy Yancey as an alibi witness but deciding that she and other family members (like Thornton and Collin) would not make beneficial alibi witnesses, Yancey's counsel turned to the police records. She reviewed the police statements given by the three other witnesses Yancey argues about here—Pearson, Ester, and Jackson. Yancey does not argue that those statements should have indicated to his counsel that these witnesses might have provided helpful alibis. More importantly, these three witnesses were listed *by the prosecution* as potential witnesses, indicating a lack of exculpatory potential, at best. Although we do not know for sure that Yancey's counsel reviewed this list, "the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Titlow*, 571 U.S. at 23 (quoting *Strickland*, 466 U.S. at 689). And the state court found that she did know they were listed as potential witnesses.

Pearson, Ester, and Jackson also could not be located by law enforcement after giving their initial statements. Law enforcement tried to subpoena them to appear at trial. Law enforcement

6

visited the men's favorite locations, left cards on their doors, and tried reaching them by phone. These efforts failed, however, and Pearson, Ester, and Jackson "could not be served."

"[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Moreover, deciding which witnesses to present at trial is a matter of strategy. *See, e.g.*, *Mickens v. Taylor*, 535 U.S. 162, 210 (2002) (Breyer, J., dissenting); *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Given the facts before us, Yancey's counsel's choosing not to pursue further Pearson, Ester, or Jackson was objectively reasonable. More importantly, the Michigan state court's reaching this same conclusion also was reasonable. Tracy Yancey told Yancey's counsel that she was with Yancey on the night of the murder with *other family members*. Tracy did not mention Pearson, Ester, and Jackson. Yancey does not allege that he did, either. So Yancey's counsel would have had little reason to consider Pearson, Ester, or Jackson as potential alibi witnesses. The prosecution's listing them as potential witnesses also points to Yancey's counsel's reasonable professional judgment in not pursuing further these three witnesses.

And Yancey was not prejudiced by this decision because Pearson, Ester, and Jackson apparently had gone off the grid: they could not be located. So even if Yancey's counsel had attempted to investigate them further, her chances of success were slim, at best, especially given that trained law enforcement could not find them. And so the state court's applying *Strickland* to Yancey's counsel's decision not to investigate and present these witnesses was reasonable.

As for the three witnesses related to Yancey, his counsel's strategic decision not to investigate them further or put them on the stand also was objectively reasonable. "[I]t is within reason to assume that [a witness's] credibility would be diminished" before the jury if the witness

had a close relationship with the defendant. *Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013). And we have explained that family members' credibility may be discounted because they "have a personal stake in exonerating" the defendant. *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007). For these very reasons, Yancey's counsel told Tracy that putting her and other family members on the stand likely would not benefit Yancey. So this strategy, and Yancey's counsel's decision not to pursue other family members further, was reasonable. Thus the state court's concluding similarly was, too.

Yancey's counsel's strategic decisions not to investigate further the six witnesses at issue and not to present them to the jury were objectively reasonable and did not prejudice Yancey. Rather than chase down and present potentially harmful witnesses, Yancey's counsel focused her defense on undermining the weakest part of the prosecution's case: its reliance on one eyewitness account. And so the Michigan court did not unreasonably apply *Strickland* to the facts before it.

**III.**

For the foregoing reasons, we **AFFIRM**.