**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-6179

KENNETH KELLEY,

Petitioner – Appellee,

v.

WILLIAM S. BOHRER, Acting Warden; MARYLAND ATTORNEY GENERAL,

Respondents – Appellants.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. George Jarrod Hazel, District Judge.  (8:20-cv-03697-GJH)

Argued:  January 25, 2024                Decided:  February 28, 2024

Before AGEE, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Reversed and remanded with instructions by published opinion.  Judge Agee wrote the opinion in which Judge Richardson and Judge Quattlebaum joined.

**ARGUED:**  Andrew John DiMiceli, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellants.  Mary Claire Davis, WEST VIRGINIA UNIVERSITY COLLEGE OF LAW, Morgantown, West Virginia, for Appellee.  **ON BRIEF:**  Anthony G. Brown, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellants.

AGEE, Circuit Judge:

The State of Maryland (the "State") appeals the district court's grant of Kenneth Kelley's petition for a writ of habeas corpus under 28 U.S.C. § 2254. In the petition, Kelley asserts that his state-court guilty plea was not knowing and voluntary because he wasn't informed of the nature and elements of the offenses to which he was pleading guilty and that the state post-conviction court erred in concluding otherwise. The district court agreed with Kelley, but in doing so, it failed to give due deference to the state-court decision. Therefore, we reverse the judgment of the district court and remand with instructions to deny Kelley's petition.

I.

On October 10, 2014, Kelley was driving his vehicle thirty-five to forty miles per hour over the speed limit with a blood alcohol concentration of .14 when he came upon a vehicle that was stopped at a red light. Without braking, Kelley slammed into the rear of the vehicle, which sent it spinning into a pole. Four of the people in that vehicle died as a result of the collision—including two children—and one of Kelley's passengers also died.

A state grand jury indicted Kelley on twenty-eight counts. Counts 1 through 5 charged Kelley with killing each of the five victims in a grossly negligent manner. Counts 6 through 10 charged Kelley with killing each of the victims "as the result of driving a vehicle in a criminally negligent manner." J.A. 58–59. Counts 11 through 15 charged Kelley with killing each of the victims "as a result of his negligent driving, operation, and control of a motor vehicle while under the influence of alcohol per se." J.A. 59–60. Counts

2

16 through 20 charged him with killing each of the victims "as a result of his negligent driving, operation, and control of a motor vehicle while impaired by alcohol." J.A. 61–62. And Counts 21 through 28 charged Kelley with driving under the influence per se, driving while impaired by alcohol, driving unlicensed, reckless driving, negligent driving, failure to control speed to avoid a collision with another vehicle, failure to stop at a steady circular red signal, and driving a vehicle on a highway with an expired license.

The State offered Kelley a plea deal whereby he would plead guilty to Counts 1 through 5 and receive a fifty-year sentence with all but thirty years suspended. Kelley rejected the State's offer and chose to plead guilty to the entire indictment so as to remain free to allocute on the sentence.

At the plea hearing, Kelley testified that he was twenty-seven years old and had not completed high school. He had a prior conviction for possession with intent to distribute but—according to his counsel—"[n]othing like this." J.A. 71. The court asked if Kelley could read English and whether he'd read the indictment, to which Kelley responded in the affirmative. The court briefly explained the charges, stating:

> [The] charges range from manslaughter by auto to driving with an expired license with additional counts of manslaughter by vehicle, criminal negligence, neglect [*sic*] homicide by motor vehicle, homicide by vessel. *Many of these merge you understand. They're the same thing.* DUI per se, driving while impaired, driving without a valid license, reckless driving, negligent driving, failure to control motor vehicle to avoid a collision, failure to stop at a steady red light, and, again, driving with an expired license.

J.A. 73 (emphasis added). The court also noted "that there are statutory penalties with these that could be 60, 70 years," J.A. 73, even though defense counsel and the prosecutor had agreed that the maximum sentence was fifty years' imprisonment.

3

The State then provided the factual basis for the indictment, which matched the facts given above. Kelley did not have any "significant additions or corrections" to the factual basis. J.A. 79.

Finally, the court asked Kelley if he "discussed this matter thoroughly" with his counsel, to which Kelley responded in the affirmative. J.A. 80. Kelley also indicated that he didn't have questions for the court or his counsel and that he was "freely, knowingly and voluntarily entering a plea to the entire indictment because in fact [he was] guilty and for no other reason." J.A. 80–81. The court therefore found that Kelley entered his plea knowingly and voluntarily.

Kelley signed a waiver of rights related to his guilty plea, in which he acknowledged that he "fully underst[oo]d the charge[s] of [the] Indictment and the elements of the offense(s)." S.J.A. 2. His attorney signed the same form, certifying that he advised Kelley of "[t]he nature of the charge(s)" and "the elements of all of the charges." S.J.A. 3.

The court sentenced Kelley to fifty years' imprisonment. He received ten years' imprisonment for negligent manslaughter-auto on each of Counts 1 through 5, to be served consecutively, and one year for Count 21 (driving under the influence per se), to be served concurrently.[1]

After an unsuccessful direct appeal, Kelley filed a petition for post-conviction relief

---

[1] Counts 6 through 10 merged with Counts 1 through 5; Count 22 merged with Count 21; and Counts 23 through 28 were suspended. Kelley was not sentenced on Counts 11 through 20 because he couldn't be sentenced "for killing the same person twice." J.A. 95. Also, Kelley was sentenced to an additional twenty-five days for failure to appear at his first scheduled sentencing.

in Maryland state court, raising (as relevant here) the issue of whether his guilty plea was knowing and voluntary when he allegedly was not advised of the nature and elements of the offenses.

The state post-conviction court held a hearing, during which Kelley testified that his plea counsel read him the charges he faced, that they went over the indictment together, and that he asked no follow-up questions about those charges. When asked to describe his understanding of the charges, Kelley stated: "I don't know. I understand that they was [*sic*] law breaking, that I broke the law." J.A. 233. He further testified: "I didn't know what the importance of the elements of a criminal offense was until I went over my case a couple of times . . . with a dude who worked at the prison library. . . . I mean, I still haven't found out what the elements to the charge that I pled guilty to are. I'm still unaware of the elements." J.A. 236–37. He also admitted to signing the waiver form. Finally, he indicated that he didn't complete high school, didn't read well, and had never previously been charged with manslaughter.

Kelley's plea attorney also testified at the post-conviction hearing. He stated that he "explained to [Kelley] that the fact that he was speeding under the influence of alcohol and ran into the rear of another vehicle was enough for him to have a conviction." J.A. 288–89. And when asked if he and Kelley went over the elements of the charges, plea counsel elaborated that he

> explained to [Kelley] what would be necessary for the jury to find -- for him to be found guilty which in my opinion, the fact that he was the driver, his car was speeding, he ran into the rear of a car, and he was under the influence of alcohol would be enough for him to receive -- the maximum sentence he could receive for any of them was ten years, because that's what the issue is.

5

You can't get two convictions on indifferent [*sic*] theories and be sentenced to both of them. So that's what I told him. So, in my opinion . . . that would be the elements in this particular case.

J.A. 289.[2] He also indicated that he went over the waiver form with Kelley—who he opined was of average intelligence—including the provision that said that defense counsel advised the defendant of the nature and elements of the charges.

However, he wasn't sure that he differentiated between the levels of negligence in the charges. *See* J.A. 287 (Q: "How would you describe the difference between gross negligence and criminal negligence to Mr. Kelley?" A: "I'm not sure -- I'm not even sure I did. I may have done that. I'm not sure I did."); J.A. 288 (Q: "[Y]ou're not sure that you described the difference between those levels of negligence to Mr. Kelley. Right?" A: "Yes, but in this, the facts in this case he is speeding. He ran into the rear of . . . another vehicle, and he is under the influence[] of alcohol. That would augment -- that would suffice for all of them."); J.A. 290 ("I don't believe I set up and distinguished each count[.]"). He also didn't believe he "ever g[ave] [Kelley] the statute[s]." J.A. 290.

Following the hearing, the state court issued a decision denying the petition for post-conviction relief. Its decision contained a seventeen-paragraph section considering the

---

[2] Plea counsel explained:

[W]hen I am trying to explain to someone the elements of the case it's more important for them to know how they directly relate to their case. For everybody it might be different. . . . Now, is that necessarily how the reading of the law would indicate? But I try to make it fact sensitive to each case. And in this case that would be what was necessary for the State to prove.

J.A. 291–92.

6

voluntariness of Kelley's plea based on his purported lack of knowledge of the elements of the charges, as well as two paragraphs in the conclusion on this claim. The state court reasoned that Kelley's plea was knowing and voluntary because, *inter alia*, he told the plea judge that he was "freely, knowingly and voluntarily entering a plea to the entire indictment" because he was in fact guilty; he "clearly acknowledged his guilt and had a sufficient understanding of the nature of the charges"; and "[t]he statement of facts [was] read into the record with little to no changes made which put [Kelley] on notice of his actions while driving that resulted in the deaths of five people." J.A. 146. The state appellate court then denied Kelley leave to appeal this decision, after which Kelley filed a petition for a writ of habeas corpus in the U.S. District Court for the District of Maryland.

In his federal habeas petition, Kelley claimed, *inter alia*, that his plea was not knowing and voluntary because he wasn't advised of the nature and elements of the offenses. The district court agreed and granted the petition, vacated Kelley's convictions and sentence, and remanded the case to state court for a new trial.[3]

In its interpretation of the state post-conviction court decision, the district court read the first twelve paragraphs on the voluntariness of the plea as containing both Kelley's arguments *and* the state court's factual findings. Based on this reading of the state court's decision, the district court concluded that the state court "unreasonably applied the facts to the law" because it made findings of fact that, *e.g.*, "counsel failed to explain the critical elements of the charges" to Kelley and "the factual basis read at the plea hearing did not

---

[3] This order is stayed pending the outcome of this appeal.

inform nor explain to [him] the elements of the more complex charges of manslaughter by vehicle," *Kelley v. Bohrer*, Civil Action No. GJH-20-03697, 2023 WL 415552, at *8 (D. Md. Jan. 25, 2023) (cleaned up), but then also found that Kelley's plea was knowing and voluntary. The district court stated that:

> Before the plea hearing, Kelley never received any explanation of the nature of the charges against him by counsel and during the plea hearing he was misled by the [state court] that the nature of the charges against him were "the same." In these circumstances, the record does not establish that his plea was knowing.

*Id.* The district court further reasoned that the reading of the factual basis at the plea hearing was insufficient to inform Kelley of the elements of the offenses and that the "canned waiver form" was also insufficient in light of plea counsel's failure to explain the elements of the offenses and the plea court's misleading statements. *Id.*

The State timely appealed the district court's order. We have jurisdiction under 28 U.S.C. § 1291.

II.

We review a district court's grant of habeas relief *de novo*, but that review is highly circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *Bowman v. Stirling*, 45 F.4th 740, 752 (4th Cir. 2022). As we have explained, "AEDPA imposes extensive limits on when a federal court is permitted to grant habeas relief to state prisoners and how a federal court is to review claims presented in a § 2254 petition." *Folkes v. Nelsen*, 34 F.4th 258, 267 (4th Cir. 2022). Under AEDPA, once a state court adjudicates a petitioner's claims on the merits, a federal court can't grant

8

habeas relief unless, as relevant here, the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if it reaches a different result than the Supreme Court previously reached on a materially indistinguishable set of facts." *Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014) (cleaned up). And a state court unreasonably applies federal law when it "identifies the correct governing legal rule" but "unreasonably applies it to the facts of the particular case," "unreasonably extends a legal principle from the Court's precedent to a new context where it should not apply[,] or unreasonably refuses to extend that principle to a new context where it should apply." *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011) (cleaned up); *see Barnes*, 751 F.3d at 238–39 ("[W]e look to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." (cleaned up)).

Thus, the AEDPA standard for reviewing claims of legal error by a state court is "highly deferential": a state prisoner must show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement." *Burt v. Titlow*, 571 U.S. 12, 18–20 (2013) (cleaned up). When applying this standard, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Further, the federal court

must assume the state court's factual determinations are correct unless there is clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## III.

The State makes two arguments in support of reversal based on the deferential AEDPA standard. First, it contends that the district court erroneously interpreted the state post-conviction court decision in an internally inconsistent way, in violation of the principle that federal courts "should avoid finding internal inconsistencies and contradictions in the decisions of state courts where they do not necessarily exist." *Ferguson v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 1315, 1340 (11th Cir. 2013). Second, the State asserts that when the state-court decision is properly construed in an internally consistent way, it is clear that the state post-conviction court's decision was not contrary to or an unreasonable application of federal law. We agree with the State on both points and thus conclude that Kelley does not overcome AEDPA's "formidable barrier to federal habeas relief." *Burt*, 571 U.S. at 16. The district court erred in concluding otherwise.

### A.

We first address the State's argument regarding the best interpretation of the state post-conviction decision. As explained above, the state-court decision contains a seventeen-paragraph section on the voluntary nature of Kelley's plea based on his knowledge of the elements of the offenses, as well as two concluding paragraphs on this claim. The State argues that the most reasonable interpretation of the state-court decision

10

is that—of the seventeen-paragraph section—the first twelve paragraphs solely discuss Kelley's arguments because they are copied nearly verbatim from his petition; the next three solely discuss the State's arguments (again, nearly verbatim); and the last two contain the court's actual findings. The State claims that to read the opinion as the district court did—which considers the first twelve paragraphs as containing Kelley's arguments *and* the court's factual findings—creates an inconsistency in the decision because those purported findings contradict the state court's ultimate conclusion that Kelley sufficiently understood the nature and elements of the charges. And, because a federal court reviewing a state-court decision pursuant to AEDPA should avoid unnecessarily finding inconsistencies in the state decision, the State contends that the district court should have read the opinion in the internally consistent way it advocates.

Kelley responds that considering the first fifteen paragraphs as containing factual findings would not conflict with the state court's ultimate decision. In his view, "there is a quite logical way to read the decision: the postconviction court unreasonably applied federal law to those factual findings, resulting in a decision that was contrary to Supreme Court precedent." Response Br. 33.

We agree with the State's interpretation of the state post-conviction court's decision and disagree with Kelley.

A number of the sentences in the first fifteen paragraphs are clearly restatements, often verbatim, of the parties' arguments and begin with statements like "Petitioner's counsel argues" and "Petitioner asserts." J.A. 139. Other sentences are statements of law or basic statements about the facts of the case that the parties don't dispute. Putting those

11

sentences aside, we conclude that the disputed sentences are best and most logically read as describing the parties' arguments rather than as separate state-court factual findings for three reasons.

First, many of the disputed sentences appear to be continuations of immediately preceding argument sentences—meaning that they continue to describe the parties' arguments even though they don't independently signal that they do. *See, e.g.*, J.A. 139 ("Petitioner's counsel argues Petitioner's plea to the indictment was not made knowingly and voluntarily because he was not advised of the elements of the offenses. Petitioner states the trial court asked questions to make sure Petitioner knew his rights to a jury, his right to testify or not to testify, and the sentencing maximum. *However, the trial court did not ask the Petitioner if he understood the nature and elements of the offenses that he pled guilty to.*" (emphasis added)).

Second, most of the sentences closely track the language in Kelley's petition, which provides further support for the conclusion that they are simply restatements of Kelley's arguments. *Compare, e.g.*, J.A. 186 (Kelley's state petition) ("Petitioner entered a plea of guilty to 28 counts. Some of the counts have a logical, understandable meaning listed in the charge itself (for example: driving while impaired or driving without a valid license). However, in its varying degrees, manslaughter by vehicle is not readily understandable." (cleaned up)), *with* J.A. 140 (state post-conviction decision) ("Petitioner pled guilty to twenty-eight (28) counts. Certain counts are easy to understand and the meaning can be deciphered from the charge itself. For example, driving while impaired or driving without a valid driver's license. Yet, depending on the degree, manslaughter by vehicle is not easy

12

to comprehend.").

Third, reading the disputed statements as factual findings would result in inconsistencies between the facts and the state-court's rationale in denying Kelley's petition. *Compare, e.g.*, J.A. 141 ("[T]he proffer did not inform nor explain to Petitioner the elements of the more complex charges of manslaughter by vehicle."), *and* J.A. 142 ("It is also clear the factual basis for the plea does not discuss or explain the nature/elements of the complex charges."), *with* J.A. 146 ("Petitioner clearly acknowledged his guilt and had a sufficient understanding of the nature of the charges. The statement of facts [was] read into the record with little to no changes made which put Petitioner on notice of his actions while driving that resulted in the deaths of five people.").

Stated differently, reading the disputed statements as factual findings would make the state court's conclusion to find Kelley's plea voluntary nonsensical. And so long as there is a reasonable alternative reading, as there is here, that reading would violate the rule that federal courts "should avoid finding internal inconsistencies and contradictions in the decisions of state courts where they do not necessarily exist." *Ferguson*, 716 F.3d at 1340; *see Holland v. Jackson*, 542 U.S. 649, 654 (2004) (per curiam) (finding that the court of appeals erred when it interpreted a state-court decision to "needlessly create internal inconsistency"); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) ("[R]eadiness to attribute error is inconsistent with the presumption that state courts know and follow the law. It is also incompatible with § 2254(d)'s highly deferential standard for evaluating state-court rulings[.]" (cleaned up)); *Elmore v. Ozmint*, 661 F.3d 783, 869 n.51 (4th Cir. 2011) (giving a state-court order the benefit of the doubt when its decision was ambiguous). Therefore,

13

giving the state-court decision "the benefit of the doubt," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted), we conclude that it should be read as only making factual findings in paragraph seventeen and in the conclusion section.[4]

B.

Now that we have identified the correct interpretation of the state post-conviction decision, we turn to the State's argument that, properly interpreted, the state decision was not contrary to or an unreasonable application of clearly established federal law. We agree.

---

[4] For clarity, those findings are as follows:

> Looking at the plea transcript, Judge Northrop found the plea was entered into knowingly and voluntarily when the statement of facts [was] read into the record. Furthermore, no changes or corrections were made to the statement of facts. This is reflected on page 13, lines 2-8. The Judge asked Petitioner whether he had any questions about the plea and Petitioner stated he was pleading guilty to the charge simply because he was guilty. This is reflected on pages 12 and 13 of the plea transcript. On March 27, 2017, Petitioner signed a Waiver of Right/Guilty Plea form where he acknowledges the following statement, "I fully understand the charge of the Indictment and the elements of the offense(s)." This issue is without merit.

J.A. 144 (paragraph 17).

> In the transcript of Petitioner's sentencing page 12, lines 23-25[,] Judge Northrop asks "Are you freely, knowingly and voluntarily entering a plea to the entire indictment because in fact you are guilty and for no other reason?" On page 13, lines 1-8 Defendant said "yes." Petitioner clearly acknowledged his guilt and had a sufficient understanding of the nature of the charges. The statement of facts [was] read into the record with little to no changes made which put Petitioner on notice of his actions while driving that resulted in the deaths of five people.

J.A. 146 (conclusion).

14

1.

"The starting point" in a habeas case "is to identify the clearly established Federal law" that governs the claims. *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013) (cleaned up). This phrase "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The parties agree that two Supreme Court cases are particularly relevant to this appeal: *Henderson v. Morgan*, 426 U.S. 637 (1976), and *Bradshaw v. Stumpf*, 545 U.S. 175 (2005).

In *Henderson*, a habeas petitioner with "substantially below average intelligence" alleged that his guilty plea to second-degree murder was involuntary because he wasn't aware that intent to cause death was an element of the charge. 426 U.S. at 638–39, 642. The Supreme Court held that the plea was involuntary because the petitioner wasn't advised by counsel or the court that intent to cause death was an essential element. *Id.* at 645–46. The Court explained:

> Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. This case is unique because the trial judge found as a fact that the element of intent was not explained to [the petitioner].

*Id.* at 647.

The Court also reasoned that the petitioner had never been formally indicted for second-degree murder and therefore wasn't aware of the intent element via the indictment.

15

*Id.* at 645. And the petitioner's admission to the factual basis—that he stabbed the victim, killing her—didn't necessarily mean that he was admitting to *intending* to kill the victim. *Id.* at 646. Therefore, the Court stated:

> There is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission, that respondent had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent. In these circumstances, it is impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary.

*Id.*

Nearly thirty years later, in *Bradshaw*, the Supreme Court again considered a habeas petitioner who pleaded guilty to a murder charge—this time, aggravated murder—but later claimed he hadn't known that specific intent to cause death was an element of the offense. 545 U.S. at 182. The Court explained that if a defendant pleads guilty without having been informed of the elements of the crime, the plea is not knowing and voluntary. *Id.* at 183. However, the Court found that the petitioner had been informed of the elements of his crime before pleading guilty because "[i]n [the petitioner's] plea hearing, his attorneys represented on the record that they had explained to their client the elements of the aggravated murder charge; [the petitioner] himself then confirmed that this representation was true." *Id.* The Court elaborated:

> [W]e have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the

16

nature and elements of the charge to which he is pleading guilty.

*Id.* (citation omitted).

2.

For purposes of this case, the take-away from *Henderson* and *Bradshaw* is that in order for a guilty plea to be voluntary, the defendant must be informed of the elements of the offense, whether by the court, defense counsel, the indictment, or the agreed-to factual basis. That rule is easily met here.

First, Kelley testified at his plea hearing that he had read the indictment, and he doesn't dispute that the indictment laid out the elements of the offenses to which he pled guilty. He testified similarly at the post-conviction hearing. *See* J.A. 231–32 (Q: "What do you mean when [counsel] told you what the 28 charges were?" A: "I mean he just pretty much told me what the 28 charges that I was facing [were]." Q: "As in he read you what the charges were?" A: "Right."). "[S]tanding alone, [that] give[s] rise to a presumption that the defendant was informed of the nature of the charge[s] against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (involving a defendant who was given a copy of the indictment containing the elements of his offense before his plea); *c.f. Henderson*, 426 U.S. at 645 (finding the plea involuntary in part because the petitioner *had never been indicted* for the charge to which he pled guilty and thus didn't learn of the intent element from the indictment).

Second, at the plea hearing, the judge asked Kelley if he had "discussed this matter thoroughly" with his counsel and was satisfied with his counsel's services, to which Kelley responded in the affirmative. J.A. 80. The court also asked Kelley if he had questions for

17

counsel or the court, to which Kelley responded, "No." J.A. 80. This Court has found that a similar exchange between a defendant and plea judge was sufficient to invoke the *Henderson* presumption that defense counsel explained the nature of the offense to the defendant. *See Harrison v. Warden, Md. Penitentiary*, 890 F.2d 676, 678 (4th Cir. 1989) (explaining that the *Henderson* presumption was appropriate because, *inter alia*, the trial judge asked the defendant "if he had discussed this matter 'entirely' with his counsel" and the defendant responded that he had).

Third, Kelley signed a waiver—which his attorney testified he reviewed with Kelley—indicating that he understood the elements of the offenses. His attorney also certified that he advised Kelley of the nature and elements of the charges. As *Henderson* explains, "a representation by defense counsel that the nature of the offense had been explained to the accused"—as is contained in the record in this case—is normally sufficient to finding a plea voluntary. 426 U.S. at 647; *see Bradshaw*, 545 U.S. at 183 (denying habeas relief on involuntary plea claim because at the plea hearing, defense counsel represented that they explained the elements of the charge to the defendant, which the defendant confirmed); *id.* ("Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge[.]").[5]

---

[5] Although Kelley contends that "the mere signing of a boilerplate statement to the effect that a defendant is knowingly waiving his rights will not discharge the government's burden," *United States v. Hayes*, 385 F.2d 375, 377 (4th Cir. 1967); *see* Response Br. 41, and even assuming his characterization of the waiver in this case is correct, a "mere" "boilerplate statement" is not the only evidence that Kelley was informed of the nature and

Fourth, the prosecution also read its factual basis into the record at the plea hearing; Kelley confirmed that he had no significant corrections to the facts; and his attorney testified at the post-conviction hearing that he discussed the facts with Kelley and explained that he believed those facts were sufficient for the jury to find him guilty of the counts in the indictment. Kelley thus plainly "possesse[d] an understanding of the law in relation to the facts," without which his guilty plea could not have been "truly voluntary." *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Considering all of this evidence collectively, *see Brady v. United States*, 397 U.S. 742, 749 (1970) ("The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it."), it was more than sufficient for the state court to reasonably conclude that Kelley's plea was knowing and voluntary. Stated differently, Kelley has failed to show that the state post-conviction court's ruling "was so lacking in justification that there was an error beyond any possibility for fairminded disagreement." *Burt*, 571 U.S. at 20 (cleaned up). Therefore, he is not entitled to the "extraordinary remedy" of habeas relief. *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (citation omitted).

### 3.

In spite of the substantial evidence supporting the state court's determination, Kelley argues—and the district court found—that his plea was involuntary. We address

---

elements of the charges. *See, e.g.*, J.A. 72 (Kelley testifying that he read the indictment); J.A. 80 (Kelley confirming that he had "discussed this matter thoroughly" with counsel).

19

Kelley's arguments and the district court's reasoning in turn.

Kelley suggests his plea was defective because he did not receive a detailed definition of the *mens rea* for each charge or a comparison of the different charges. But that is simply not what *Henderson* and *Bradshaw* require. Nor has Kelley identified any Supreme Court case dictating, or even suggesting, that legal terms of art must be explained to a defendant before he can knowingly and voluntarily plead guilty. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error *well understood and comprehended in existing law* beyond any possibility for fairminded disagreement." (emphasis added)).

The district court took issue with the state post-conviction court's decision because "Kelley was provided with *incorrect* information by the [state court] about the nature of the charges." *Kelley*, 2023 WL 415552, at *8. Specifically, the district court determined that the plea court misled Kelley about the maximum penalties he faced and incorrectly told him that many of his charges were "the same." *Id.* But Kelley doesn't bring a claim for an involuntary plea based on any failure to inform him of the penalties he faced, and even if he had pursued such a claim, the state post-conviction court could've reasonably rejected the plea court's error as harmless because the plea court advised him of *higher* statutory penalties than he actually could've received, and he nevertheless chose to plead guilty. Further, although the plea court's statement that "[m]any of [the charges] merge . . . . They're the same thing," J.A. 73, could've been better stated, the court was correct

20

that many of the charges would ultimately merge for purposes of sentencing. *See* J.A. 65–66 (sentencing sheets indicating, *e.g.*, that Counts 6 through 10 merged with Counts 1 through 5); *see also Ferguson*, 716 F.3d at 1340 (giving the state court "the benefit of the doubt," as required by AEDPA, even though the state court's word choice "could have been more precise and technically correct"). Therefore, the district court erred in relying on these purported misstatements to grant Kelley's habeas petition.

Next, the district court found that Kelley's signing of the waiver form was insufficient to render the plea voluntary when his counsel didn't explain the elements of the offenses and the court misled him about the nature of the charges. This conclusion is erroneous. First, as explained above, there was sufficient evidence that Kelley was informed of the elements of the offenses. And to the extent the district court relied on the state post-conviction court's purported finding that Kelley's counsel didn't explain the elements of the charges to him, that reflects a misinterpretation of the state court's factual findings. Second, as explained above, the state post-conviction court could have reasonably concluded that the plea court's statements were not misleading or were harmless.

In sum, reviewing Kelley's claims of error under the requisite "highly deferential" standard, there is ample evidence supporting the state court's conclusion that Kelley's plea was knowing and voluntary due to his knowledge of the nature and elements of the charges to which he pleaded guilty. *Burt*, 571 U.S. at 18. In other words, it was erroneous for the district court to conclude "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement." *Id.* at 19–20 (cleaned up).

21

IV.

In conclusion, the district court erred in granting Kelley's habeas petition. We therefore reverse and remand with instructions to deny Kelley's habeas corpus petition.

*REVERSED AND REMANDED WITH INSTRUCTIONS*