IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 2, 2025

## GABRIEL DOTSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 14-06409          W. Mark Ward, Senior Judge**

_____

**No. W2025-00406-CCA-R3-PC**
_____

Petitioner, Gabriel Dotson, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in denying his claim that trial counsel was ineffective by conceding guilt during closing argument against Petitioner's wishes. Upon review of the entire record, the briefs of the parties, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J. and CAMILLE R. MCMULLEN, J., joined.

Joseph McClusky, Memphis, Tennessee, for the appellant, Gabriel Dotson.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Steve Mulroy, District Attorney General; and M. Haden Lawyer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

*Trial*[1]

---

[1] While the trial transcript was not included in Petitioner's appellate filing, we take judicial notice of the trial transcripts and record. *State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009); Tenn. R. App. P. 13(c).

On December 16, 2014, a Shelby County Grand Jury indicted Petitioner for rape of a child (count 1), aggravated sexual battery (count 2), rape (count 3), and incest (count 4), along with a charge for statutory rape by an authority figure, which was later dismissed. After a jury trial, Petitioner was convicted as charged and received an effective sentence of thirty-five years. This court affirmed Petitioner's convictions on appeal, and our supreme court denied review. *See State v. Dotson*, No. W2017-01099-CCA-R3-CD, (Tenn. Crim. App. May 10, 2018), *perm. app. denied* (Tenn. Sept. 14, 2018).

The facts relevant to this appeal show that Petitioner began sexually abusing his biological daughter, G.D.,[2] in the summer of 2009, just before her seventh-grade school year; the victim was born on July 20, 1997. *Id.* at *1. The victim could not recall the exact date of the first incident but knew she was eleven or twelve years old at the time. *Id.* During that incident, Petitioner came into the victim's room at night, got under the covers in the bed with her, and performed oral sex on her. *Id.* The victim stated Petitioner used his tongue and licked inside and outside of her vagina. Shortly after the abuse began, Petitioner started demanding that the victim give him "special hugs" which involved the victim wrapping her arms around Petitioner's neck while he held onto her buttocks and pressed her close to him so she could feel his erect penis. *Id.*

The abuse occurred "many times" between 2009 and 2014, sometimes as often as twice per week, and progressed to Petitioner's attempts to penetrate the victim vaginally and anally. *Id.* The victim recounted an incident that occurred in 2011, after her mother's birthday and prior to her freshman year of high school, when Petitioner got into her bed and tried to penetrate her anus with his penis. *Id.* She also described a time in late 2013 or early 2014 when she was in her parents' bedroom, lying on their bed with her infant twin brothers. Petitioner came into the room, got on the bed, pulled down her pants, and tried to insert his penis into her vagina. The victim said she felt "a little pressure" but that she did not think Petitioner's penis "went into [her] vagina, per se." While the abuse was going on, the victim said she would tell Petitioner to stop, but he was not deterred. *Id.* According to the victim, Petitioner had told her that he "just wanted to teach her." *Id.*

The victim did not disclose the abuse to anyone for several years for numerous reasons, including her fear of Petitioner. *Id.* at *2. In 2014, during her junior year of high school, she told two friends about the abuse and self-harm. One of the friends contacted Annika Ezell, the sponsor of an organization the victim was involved in, and told Ms. Ezell that the victim was hurting herself. When Ms. Ezell initially spoke to the

---

[2] It is the policy of this Court to refer to victims of sexual abuse by their initials. For purposes of this opinion, "the victim" will refer to G.D. unless otherwise noted.

victim, the victim downplayed the situation and told Ms. Ezell she was just "stressing out." However, a day or two later, the victim reached out to Ms. Ezell and admitted she had been hurting herself due to Petitioner's abuse. *Id.* Ms. Ezell then reported Petitioner's sexual abuse of the victim to the Department of Children's Services ("DCS"). *Id.*

In March 2014, Sharon McQueen from DCS met with the victim and the assistant principal. *Id.* During the meeting, the victim disclosed that Petitioner had been sexually abusing her since 2009 and gave details of the incidents of abuse. *Id.* The victim's mother and Petitioner arrived at the school while the meeting was taking place and were told the victim did not want to see them. *Id.* Petitioner was "nervous," "upset," and "on edge;" he was "insisting" on going back to see the victim and pacing back and forth in the front office. The victim's mother was taken to a separate office while Petitioner was instructed to remain in the school's front office with the couple's infant twins. *Id.* The police arrived while the victim's mother was speaking with school administrators and Petitioner fled, leaving his infant twins in the front office. *Id.* When the victim's mother later confronted Petitioner with the allegations, he remained silent. *Id.* The victim's mother did not allow Petitioner to return home after learning of the abuse. *Id.*

Officer Jonathan Fields with the Memphis Police Department ("MPD") was on duty on the evening of March 19, 2014, when Petitioner arrived at the station with his uncle. *Id.* at *3. Officer Fields said Petitioner seemed nervous and upset and that when Petitioner came into the station,

> [He] held his hands out and told [the officer] to put the cuffs on him, that he wanted to kill himself, because he had been touching his daughter . . . He said that he had been touching on her for a couple of years, and he only did it when he was intoxicated . . . he didn't have sex with her, but he touched her underneath her clothes.

*Id.* Because Petitioner said he wanted to kill himself, Officer Fields contacted the Crisis Intervention Team ("CIT").

Officer SirCrease Brooks[3], a CIT officer with MPD, responded to Officer Fields' call for assistance. Petitioner admitted to Officer Brooks that he had "been touching his daughter, and . . . making her touch [him]." *Id.* Petitioner also said he knew what he did was wrong and reiterated that he wanted to kill himself. *Id.*

---

[3] The direct appeal refers to this officer as Officer SirCrease Fields. *Dotson*, 2018 WL 2175696, at *3. However, at trial, the officer stated and spelled his name as SirCrease Brooks. We will refer to him in this opinion as Officer Brooks consistent with his trial testimony.

The jury convicted Petitioner as charged, and the court sentenced him to an effective thirty-five-year sentence. This court affirmed Petitioner's convictions (*see Dotson*, 2018 WL 2175696) and our supreme court denied review. (Tenn. Sept. 14, 2018).

*Post-Conviction Proceedings*

Petitioner filed a timely petition for post-conviction relief in 2019 complaining of multiple instances of ineffective assistance of counsel, including, as relevant to this appeal, that trial counsel conceded Petitioner's guilt during his closing argument. After delays due to the Covid-19 pandemic, an evidentiary hearing was held December 19, 2024.

Petitioner testified that at trial, he pled not guilty to all four counts against him. He stated that he never agreed for trial counsel to argue that Petitioner was guilty and did not authorize trial counsel to tell the jury they were going to find Petitioner guilty. Petitioner said that in closing argument, while discussing count three, trial counsel told the jury, "[W]hat he admitted to was [the incident of anal penetration]," implying that Petitioner had admitted guilt to the rape charge, when in fact, Petitioner had adamantly denied ever penetrating the victim  Additionally, Petitioner stated that at the end of the closing argument, trial counsel asked the jury to find Petitioner not guilty of counts one and four but never addressed counts two and three. Petitioner thought trial counsel was implying that Petitioner was guilty of aggravated sexual battery (count two) and rape (count three), adding that trial counsel "basically was telling the jury that he thought [Petitioner] was guilty."

The post-conviction court questioned Petitioner about his confession:

Court:  How were you going to explain your confession?

Petitioner:  I mean –

Court:  [We]re you going to tell the jury that you never touched your daughter?

Petitioner:  No, sir, just because that's –

Court:  Okay.  So you were going to admit to it, the same thing [trial counsel] did in closing?

- 4 -

Petitioner: He didn't admit – that's not what he admitted to. He admitted that I was guilty to –

Court: I mean, you were going to do the same though?

Petitioner: No.

Court: Oh. You were going to lie to the jury?

Petitioner: No.

Court: How were you going to explain the fact that you confessed?

Petitioner: The same way I went in the police precinct by telling them that I had inappropriately touched my daughter.

Court: So that's what you were going to tell the jury if you had testified?

Petitioner: Yes.

Court: But you were going to say I never put my penis in her or my tongue in her? I never penetrated her –

Petitioner: Never.

Court: -- is that what your testimony was going to be?

\*      \*      \*

Petitioner: -- what I would've told them. I never tried to do any of that.

Court: Is that not what he argued –

Petitioner: No.

Court: -- during closing?

Petitioner: No, that's not what he argued.

Court: What did he argue?

- 5 -

Petitioner: To me, he just said I was guilty.

Trial counsel testified that he began his representation of Petitioner in February 2015. At the time of Petitioner's trial, counsel had practiced law for twenty years and had substantial criminal law experience. Trial counsel said he regularly met with Petitioner in person to prepare for trial and had a good rapport with Petitioner. Trial counsel recognized challenges with Petitioner's case from the first meeting because the victim was a child and Petitioner had made a voluntary confession to police. Petitioner had repeatedly admitted to molesting his daughter but was adamant that his actions fell short of rape. Given the "bad facts" of the case, trial counsel said he wanted to pursue a strategy of conceding guilt to the lesser counts to gain credibility with the jury. Trial counsel thought the best time to concede would have been during opening statements, but Petitioner refused. However, as the trial progressed, Petitioner began to see there was "not light at the end of the tunnel." Trial counsel said he explained to Petitioner that conceding during closing arguments was the best strategy because they "needed that credibility to walk away with anything short of just a disaster." After discussing the matter, trial counsel said Petitioner "was okay with me doing that."

The post-conviction court entered a written order on February 18, 2025, with findings of fact and consideration of each of Petitioner's claims of ineffective assistance of counsel. Regarding the claim relevant to this appeal, the court credited trial counsel's testimony that he discussed the strategy of conceding guilt during closing argument with Petitioner and Petitioner agreed to the concession. The court found that Petitioner had failed to show that trial counsel performed deficiently or that he was prejudiced.

## Analysis

On appeal, Petitioner claims the court erred in denying post-conviction relief. He contends that trial counsel was ineffective for conceding guilt during closing argument against Petitioner's wishes. The State responds that there was no error because the post-conviction court found that trial counsel did not concede guilt against Petitioner's wishes. Additionally, as a threshold matter, the State argues that Petitioner's appeal was untimely filed and should therefore be dismissed. We will first address the timeliness issue.

Under Tennessee Rule of Appellate Procedure 4(a), the notice of appeal must be filed "within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). However, the rule also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). The appellant bears the burden of perfecting his appeal or demonstrating that the "interests of justice" merit waiver of an untimely filed notice of appeal. *State v. James*, No. E2021-00559-CCA-R3-CD, 2022

WL 633540, at *1 (Tenn. Crim. App. Mar. 4, 2022) (citing *State v. Carl T. Jones*, No. M2011-00878-CCA-R3-CD, 2011 WL 5573579, at *1 (Tenn. Crim. App. Nov. 15, 2011)).

"'In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case.'" *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (quoting *State v. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005). An appellant is not automatically entitled to waiver and waiver should not be granted unless in the interest of justice. *James*, 2022 WL 633540, at *1. "If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." *Id.* (quoting *Broyld*, 2005 WL 3543415, at *1).

Here, the post-conviction court's order denying relief was filed on February 18, 2025; thus, Petitioner had thirty days, or until March 20, 2025, to file his notice of appeal. Petitioner's notice of appeal was filed on March 21, 2025. In its response to Petitioner's brief, the State argues that Petitioner's appeal should be dismissed as untimely. Petitioner did not file a reply brief addressing the State's argument, nor did he request waiver or offer any reasons why the "interests of justice" would merit waiver of his untimely filed notice of appeal. However, despite Petitioner's failure to address the timeliness of his notice, given the constitutional nature of Petitioner's claim and the fact that the delay was one day, we will address the merits of Petitioner's claim.

Under the Post-Conviction Procedure Act, a criminal defendant may seek relief from a conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. As such, "[t]he deprivation of effective assistance of counsel is a constitutional claim cognizable under the Post-Conviction Procedure Act." *Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020) (quoting *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016)).

"Appellate review of an ineffective assistance of counsel claim is a mixed question of law and fact that this Court reviews de novo." *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)). However, the post-conviction court's factual findings are conclusive on appeal unless evidence preponderates against them. *Howard*, 604 S.W.3d at 57 (citing Tenn. R. App. P. 13(d)); *see also Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014); *Fields v. State*, 40 S.W.3d

- 7 -

450, 456, n.4 (Tenn. 2001). Accordingly, as an appellate court, we are not to re-weigh or re-evaluate the evidence or substitute our inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). In general, we defer to a post-conviction court's findings concerning witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015); *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013).

A defendant asserting ineffective representation must overcome the strong presumption that counsel exercised reasonable judgment in all significant decisions. *Strickland*, 466 U.S. at 687-89; *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Kendrick*, 454 S.W.3d at 458; *Nesbit v. State*, 452 S.W.3d 779, 788 (Tenn. 2014). When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993); *Kendrick*, 454 S.W.3d at 457. Deficient performance is representation that falls below "an objective standard of reasonableness" as measured by prevailing professional norms. *Kendrick*, 454 S.W.3d at 457 (quoting *Strickland*, 466 U.S. at 688); *see also Baxter v. Rose*, 523 S.W.2d 930, 932-33 (Tenn. 1975).

To show prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Kendrick*, 454 S.W.3d at 458. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Reasonable probability is a lesser burden of proof than preponderance of the evidence. *Kendrick*, 454 S.W.3d at 458 (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). When the proof of guilt is overwhelming, proving prejudice is exceedingly difficult. *See Proctor v. State*, 868 S.W.2d 669, 673 (Tenn. Crim. App. 1992); *Bray v. State*, No. M2011-00665-CCA-R3-PC, 2012 WL 1895948, at *6 (Tenn. Crim. App. May 23, 2012) (finding that, in light of overwhelming evidence, petitioner could not demonstrate prejudice); *McNeil v. State*, No. M2010-00671-CCA-R3-PC, 2011 WL 704452, at *6 (Tenn. Crim. App. Mar. 1, 2011) (finding that overwhelming evidence of guilt precluded showing of prejudice from admission of evidence at trial).

Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697; *Nesbit*, 452 S.W.3d at 786-87. Accordingly, if either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). "[T]he petitioner is required to prove the fact of counsel's alleged error by clear and convincing evidence."

*Phillips*, 647 S.W.3d at 401 (quoting *Dellinger*, 279 S.W.3d at 294); *see also* T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1).

Here, Petitioner argues that under *McCoy v. Louisiana*, he received ineffective assistance of counsel because trial counsel conceded guilt without Petitioner's authorization. 584 U.S. 414 (2018) (holding that defendant had the right under the Sixth Amendment to insist that his counsel refrain from admitting guilt, even though counsel reasonably believed that admitting guilt afforded defendant the best chance to avoid a death sentence). However, under *McCoy*, trial counsel was not required to obtain Petitioner's explicit consent to pursue a guilt concession strategy. *Id.* at 417 (citing *Florida v. Nixon,* 543 U.S. 175, 192 (2004)). "When counsel confers with the defendant and the defendant remains silent, neither approving nor protesting counsel's proposed concession strategy, no blanket rule demand[s] the defendant's explicit consent to implementation of that strategy." *Id.* (internal quotes and citations omitted).

Here, the post-conviction court acknowledged the conflicting testimony from trial counsel and Petitioner regarding the concession strategy and resolved all conflicts in the testimony against Petitioner as set out in its order:

> Petitioner claimed that the matter of essentially conceding the lesser charges was never discussed with him prior to trial. Trial counsel testified that he did discuss this strategy with the Petitioner and that he was in agreement. Petitioner makes no allegation that he specifically objected to the strategy. This court resolves the conflicting testimony in favor of trial counsel's version.

Because the proof does not preponderate against it, this court is bound by the post-conviction court's credibility finding. "The overlap between a petitioner's statutory burden of proof under Tennessee Code Annotated section 40-30-110(f) and a court's application of the *Strickland* inquiry means that Petitioner is required to prove the *fact* of counsel's alleged error by clear and convincing evidence." *Phillips*, 647 S.W.3d at 401 (quoting *Dellinger*, 279 S.W.3d at 294) (emphasis in original). It is only after Petitioner has met that burden of proof that this Court must then assess the ineffective assistance of counsel claim under *Strickland*. *Id.* Petitioner confessed to law enforcement that he touched the victim and made her touch him, but he denied penetrating her. Trial counsel's strategy of conceding Petitioner's guilt on lesser charges was consistent with Petitioner's confession, and the post-conviction court accredited trial counsel's testimony that he discussed this strategy with Petitioner who agreed. The record does not preponderate against the post-conviction court's finding that Petitioner failed to prove by clear and convincing evidence that trial counsel conceded guilt against Petitioner's

wishes.  Thus, further analysis under *Strickland* is unnecessary.  Petitioner is not entitled to relief.

## CONCLUSION

We conclude that the record supports the post-conviction court's finding that Petitioner was not denied the effective assistance of counsel.  For the foregoing reasons, the judgment of the post-conviction court is affirmed.

s/*Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE